1        UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4                       - - -

5

6                                    # COPY

7                                   )
   UNITED STATES OF AMERICA,        )
8                                   )
                     PLAINTIFF,     )
9                                   )
          vs.                       ) No. CR10-1031-AHM
10                                  )
   (2) ANGELA MARIA GOMEZ AGUILAR,  )
11 (3) LINDSEY MANUFACTURING COMPANY, )
   (4) KEITH E. LINDSEY, and        )
12 (5) STEVE K. LEE,                )
                                    )
13                   DEFENDANTS.    )
   _____ )

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS

17           LOS ANGELES, CALIFORNIA

18          TUESDAY, DECEMBER 14, 2010

19                 3:00 P.M.

20

21

22      _____

23           CINDY L. NIRENBERG, CSR 5059
             U.S. Official Court Reporter
24           312 North Spring Street, #438
             Los Angeles, California 90012
25               www.cindynirenberg.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:
                         OFFICE OF THE UNITED STATES ATTORNEY
 3                       BY: DOUGLAS MILLER,
                             ASSISTANT U.S. ATTORNEY
 4                       13TH FLOOR
                         312 NORTH SPRING STREET
 5                       LOS ANGELES, CA 90012
                         213-894-2434
 6
                         US DEPARTMENT OF JUSTICE
 7                       FRAUD SECTION, CRIMINAL DIVISION
                         BY: NICOLA J. MRAZEK,
 8                           ASSISTANT U.S. ATTORNEY
                         1400 NEW YORK AVENUE NW
 9                       SUITE 4404
                         WASHINGTON, DC 20005
10                       202-514-8122

11

12

13   FOR THE DEFENDANT (2) AGUILAR:
                         GIRARDI KEESE
14                       BY: STEPHEN G. LARSON, ATTORNEY AT LAW
                         1126 WILSHIRE BOULEVARD
15                       LOS ANGELES, CA 90017
                         213-977-0211
16

17   FOR THE DEFENDANTS (3) LINDSEY MANUFACTURING COMPANY
     & (4) KEITH E. LINDSEY:
18                       GREENBERG TRAURIG
                         BY: JAN L. HANDZLIK, ATTORNEY AT LAW
19                           MATTHEW B. HAYES, ATTORNEY AT LAW
                         2450 COLORADO AVENUE
20                       SUITE 400-E
                         SANTA MONICA, CA 90404
21                       310-586-6542

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   APPEARANCES OF COUNSEL (CONTINUED):

 2


 3   FOR THE DEFENDANT (5) STEVE K. LEE:
                          CROWELL & MORING
 4                        BY: JANET I. LEVINE, ATTORNEY AT LAW
                              MARTINIQUE BUSINO, ATTORNEY AT LAW
 5                        515 SOUTH FLOWER STREET
                          40TH FLOOR
 6                        LOS ANGELES, CA 90071
                          213-622-4750
 7


 8


 9   ALSO PRESENT:      ELSA VASQUEZ, SPANISH INTERPRETER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          I N D E X

2

3   *COMMENTS BY:*                    *PAGE*
    THE COURT                          6
4   MR. MILLER                        10
    THE COURT                         16
5   MR. MILLER                        21
    MR. HANDZLIK                      22
6   MR. MILLER                        22
    MS. LEVINE                        23
7   THE COURT                         24
    MR. LARSON                        25
8   MR. HANDZLIK                      31
    MR. MILLER                        40
9   MS. LEVINE                        43
    MR. MILLER                        50
10  MR. LARSON                        52

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          LOS ANGELES, CALIFORNIA; TUESDAY, DECEMBER 14, 2010

 2                          3:00 P.M.

 3                          - - - - -

 4          THE CLERK:  Calling Item Number 2, CR10-1031(A), USA

 5   versus Angela Maria Gomez Aguilar, Lindsey Manufacturing

 6   Company, Keith E. Lindsey, Steve K. Lee.

 7          Counsel, state your appearances, please.

 8          MR. MILLER:  Good afternoon, Your Honor.  Douglas

 9   Miller appearing on behalf of the United States.  With me at

10   counsel table is Nicola Mrazek, senior trial attorney for the

11   Department of Justice.

12          THE COURT:  Good afternoon to you both.

13          MR. LARSON:  Good afternoon, Your Honor.  Stephen

14   Larson appearing for Angela Maria Gomez.  She is present in

15   custody with the assistance of the Spanish language

16   interpreter.

17          THE COURT:  Good afternoon.

18          MR. HANDZLIK:  Good afternoon, Your Honor.  Jan

19   Handzlik and Matthew Hayes, who is seated in the first row

20   inside the well, on behalf of Lindsey Manufacturing and Dr.

21   Keith Lindsey.

22          Dr. Lindsey is present in court.  With the Court's

23   permission, we've asked him to remain in the body of the

24   courtroom.

25          THE COURT:  That's fine.
```

```
1              MR. HANDZLIK:  Thank you.

2              MS. LEVINE:  Good afternoon, Your Honor.  Janet

3    Levine and Martinique Busino on behalf of Steve Lee, who is

4    sitting by Dr. Lindsey, Your Honor.

5              THE COURT:  Okay.  And he is welcome to remain there

6    as well.

7              MS. LEVINE:  Thank you, Your Honor.

8              THE COURT:  All right.  We have motions, and I'm

9    going to rule on them orally, and I don't have a written

10   tentative.  I think the issues are pretty straightforward and

11   not unusual, and I haven't had time to draft any order and

12   don't intend to follow up.

13             If anybody needs to have a written memorialization of

14   the rulings, you're welcome to get the transcript and lodge a

15   proposed order, but I'm not sure that it's absolutely

16   necessary; there will be minutes.

17             I think we have motions to dismiss -- a motion to

18   dismiss that Mr. Larson brought on behalf of his client with an

19   alternative relief sought of a Bill of Particulars and then

20   Bills of Particulars that the Lindsey defendants made a motion

21   to achieve.

22             It makes sense to rule on the motion to dismiss first

23   because if the indictment were faulty, it might moot some of

24   the need for -- the claimed need for a Bill of Particulars.

25             Now, I recognize that Angela -- and I'll refer to her
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    without any disrespect intended -- or Ms. Gomez Aguilar would

2    probably be more appropriate; my notes say Angela.  She is

3    accused only in Counts Seven and Eight, but part of the basis

4    for Mr. Larson's contention that the indictment is insufficient

5    is claimed defects in the underlying conspiracy and FCPA

6    charges that are the predicates for the money laundering

7    charges, and I don't think that contention is sound.

8            I think that the terms of the indictment, the First

9    Superseding Indictment, setting forth the conspiracy charge in

10   the substantive counts are in compliance with the requirements,

11   the principal decision, and it was cited the first time around

12   when I was greeted with a motion to dismiss in the initial

13   indictment.

14           The principal case construing the FCPA is United

15   States versus Kay, and there's under that case and the teaching

16   in that case -- and I'm referring now just to the FCPA

17   charges -- the notion that the indictment needs to allege what

18   benefits were actually granted in return for the alleged

19   corrupt payments and bribes is not a valid notion.

20           The FCPA doesn't require that a contract or an

21   advantage have actually been obtained, but instead that it had

22   been sought and intended.  That's clear from the face of the

23   statute, it's clear from the language construing the statute in

24   the Kay case, so the claimed defect that the indictment failed

25   to identify what benefits were actually achieved is, I think,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    not a sound contention.

2            I know parenthetically that I don't recall in the

3    motion for a Bill of Particulars that the Lindsey defendants

4    filed any contention that there needed to be additional

5    disclosures of the actual contracts or benefits that were

6    obtained.  I may have missed something, but even they didn't

7    seem to think that that was a defect in what's been currently

8    alleged.

9            As to Counts Six and Seven -- I think it's Six and

10   Seven, or maybe it's Seven and Eight.  I could have lost track

11   of the numbers, but, in any event, the counts that Ms. Aguilar

12   is accused of, there isn't any requirement that the precise

13   contours and provisions of Article 222, the Mexican law

14   provision, be spelled out.

15           The Lazarenko case -- and it's the second case --

16   that initial decision, which was cited by some of the parties,

17   was superceded by a later decision of 564 F.3d 1026, and one of

18   the charges in the Lazarenko case was a money laundering

19   charge, slightly different subsection, but at Page 1033, the

20   Ninth Circuit held that it is unnecessary for the government to

21   plead a specific violation of foreign law and to spell out

22   precisely what the contours of the foreign law are, what it

23   either prohibited or required, so I don't think that the basis

24   for dismissing the indictment that's been asserted on behalf of

25   Ms. Gomez Aguilar has merit.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              I should pause for a minute and just confirm. I don't
 2    think you filed any reply papers, Mr. Larson; is that correct?
 3              MR. LARSON:  No, Your Honor.
 4              THE COURT:  That is correct?
 5              MR. LARSON:  That is correct.
 6              THE COURT:  Okay.  So I have read all of the papers,
 7    and those are my findings, and that is my ruling on the motion
 8    to dismiss.
 9              Now, I'm going to move on to the Bill of Particulars.
10    I will not deprive counsel an opportunity to be heard, so in a
11    sense, you can construe what I've said as being the equivalent
12    of a tentative written order.
13              I doubt very much whether there would be facts or
14    principles called to my attention that would prompt me to
15    change my conclusion, but if counsel wish to be heard, hold
16    off, I'll give you that opportunity.
17              I just want to move on to the alternative relief that
18    Mr. Larson sought and the full relief that the Lindsey
19    defendants sought in the form of a Bill of Particulars.
20              Before I get to my findings and conclusions on that,
21    I have some questions for the prosecution, so which of you will
22    be in a position -- Mr. Miller, why don't you go to the lectern
23    for a minute.
24              There seems to be some uncertainty in this case as to
25    what has gone on, what has been produced or exchanged since
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    some of these papers were initially filed.  The opposition that
 2    you filed to the Lindsey defendants' motion for a Bill of
 3    Particulars said that you had provided the key 302s, including
 4    grand jury testimony, of the key witnesses.  You didn't specify
 5    who those people are, but that's the adjective you termed, the
 6    "key witnesses."
 7              I construe Footnote 2 in the reply papers that Ms.
 8    Levine filed to place that assertion in question.  Footnote 2
 9    says that there are many still unidentified parties and I think
10    that may be a reference to the persons referred to in the
11    indictment, whereas witness statements would have probably
12    encompassed that.
13              In any event, what's the state of the play in terms
14    of production of 302s and the like, grand jury testimony and
15    the like?
16              MR. MILLER:  Your Honor, we have produced what we
17    believe are all of the 302s that the government has completed
18    of the witnesses so far.
19              There are witnesses that we are still meeting with,
20    and for those witnesses, we are still generating 302s, so
21    that's not to say that all of the 302s are done or provided in
22    this case; however, the ones that are in the government's
23    possession, as well as the notes for the witnesses we intend --
24    or the defendants in this case, the notes behind those 302s --
25    that's Mr. Lee and Mr. Lindsey -- those have also been
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    provided.

2              In addition --

3              THE COURT:  Stop there for a second because I don't

4    think I understand you.  I take it from your last sentence that

5    Dr. Lindsey and Mr. Lee were questioned --

6              MR. MILLER:  That's correct, Your Honor.

7              THE COURT:  -- that statements were prepared after

8    they were questioned --

9              MR. MILLER:  That's correct.

10             THE COURT:  -- and those statements have been turned

11   over?

12             MR. MILLER:  Yes, Your Honor.

13             THE COURT:  Okay.  And each of them was questioned on

14   how many occasions?

15             MR. MILLER:  They were questioned on one occasion.

16   They were questioned at the same time, essentially, on the same

17   day in separate rooms and gave one 302 for each.

18             THE COURT:  Did either of them testify before the

19   grand jury?

20             MR. MILLER:  No, they did not.

21             THE COURT:  Okay.  So you produced their statements

22   and the statements of other witnesses?

23             MR. MILLER:  Yes, Your Honor.

24             THE COURT:  Non-defendant witnesses?

25             MR. MILLER:  Yes, Your Honor.

```
 1           THE COURT:  But there are some people who have not

 2   yet been questioned and, therefore, no 302s have been

 3   developed?

 4           MR. MILLER:  There are witnesses that we have

 5   questioned, but that was done more recently, and we're

 6   preparing the 302s now that those interviews have been

 7   completed.  And I think -- if I may have a moment.

 8        (Counsel confer off the record.)

 9           MR. MILLER:  And that is only a total of three

10   people, Your Honor, so it's not that there are several witness

11   interviews that are undisclosed at this point.  It's less than

12   a handful.

13           And then what I was going to bring up when the Court

14   stopped me was that we've also turned over the grand jury

15   testimony of the three witnesses that the government may call

16   as witnesses at trial.  Those are three of the employees from

17   one of the defendants in this case, Lindsey Manufacturing.

18           THE COURT:  Okay.  Now, Page 18 of your opposition to

19   Ms. Gomez Aguilar's motion -- this may cover the same ground

20   that you just were answering --

21           MR. MILLER:  What's the page number?

22           THE COURT:  Page 18 of your opposition papers to that

23   motion says that, "Her lawyer was recently given the majority

24   of the interviews conducted in the course of the investigation

25   with the balance to be provided at the end of the week."
```

1               Now, that was filed on December 6th.  Where does that

2    assurance stand right now?

3               MR. MILLER:  So that is correct.  Those have been

4    provided.  The interviews that I'm referencing, Your Honor,

5    happened after the government filed this motion, so what's

6    referred to in this motion --

7               THE COURT:  The government didn't file this motion.

8    You mean the defendants filed the motion?

9               MR. MILLER:  Pardon me.  What I'm referring to is the

10   government's opposition to the motion to dismiss the First

11   Superceding Indictment by Ms. Aguilar.

12              THE COURT:  Right.

13              MR. MILLER:  And in this motion we refer to documents

14   that we were on the verge, if you will, of turning over, and

15   those documents have been turned over.

16              THE COURT:  Okay.  But what I'm just trying to

17   understand is what you just told me about the Lindsey

18   defendants and the production of witness statements and the

19   like for them, does that extend in the same manner and as to

20   the same statements for Ms. Gomez Aguilar as well or is there

21   some different pool of --

22              MR. MILLER:  No, Your Honor.  The reason I brought

23   that out, Ms. Aguilar was never interviewed so there's no 302

24   for her, but she has been receiving the same thing that we're

25   providing to the other defendants.

```
 1            THE COURT:  Okay.  Now, I will cite some of the

 2    principles applicable to Rule 7(f) and the Bill of Particulars

 3    in a moment, but even though there is no recognized

 4    authorities -- none at least in the Ninth Circuit -- for the

 5    proposition that absent some intervening or unusual

 6    circumstance the government has the duty to identify all

 7    co-conspirators and all other individuals, that seems to be one

 8    of the recuring issues that Bills of Particular rulings

 9    address.

10            It's not so much central to the way I construe the

11    Lindsey defendants' motion, but in any event, have you

12    identified in any fashion to the defendants who the people are

13    who the First Superseding Indictment refers to as other

14    individuals and other co-conspirators?

15            MR. MILLER:  Your Honor, we have identified the

16    individuals in the indictment itself that we believe were the

17    main participants in this conspiracy, and we identified them

18    either by their title, like Official 1 or Official 2 --

19            THE COURT:  Whose names you actually disclosed in

20    your opposition?

21            MR. MILLER:  We ultimately disclosed in our

22    opposition.  And then the participants, if you will, in the

23    conspiracy as charged, the reference -- the clause --

24            THE COURT:  Hold on, Mr. Miller.  The participants in

25    the conspiracy as charged include the named defendants.  What
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    about unindicted conspirators?  Have you disclosed their

2    identity?

3            MR. MILLER:  Your Honor, the unindicted

4    co-conspirators that are referenced in the indictment are

5    Official 1 and Official 2 and an individual named Cesar Moreno

6    or CM.  We believe that the identity of those individuals was

7    revealed in the discovery and, frankly, in discussions that

8    we've had with the defense counsel.

9            Beyond that, there are participants in this

10   conspiracy that we, frankly, don't know about.  We believe that

11   certain things must have taken place in furtherance of this

12   conspiracy that the government will never know about, but those

13   that we believe to be known participants, known

14   co-conspirators, we've tried to identify in the indictment.

15           The discovery that may make reference -- the

16   discovery provided in this case I think identifies other people

17   that would potentially be qualified as co-conspirators in the

18   case.

19           For example, there is an individual named Mario

20   Pineda who was an assistant of Enrique Aguilar, but he is not

21   referred to in the indictment as someone that we make reference

22   to but don't identify.  But if you look at the discovery, you

23   can see that he had a hand in a lot of what was happening in

24   this case, so we haven't -- so the people that we have charged

25   or the people that we are identifying as co-conspirators that

1   we know about, we put that into the indictment.

2          There are other individuals that helped out in some

3   way in this conspiracy that if you were to look at the

4   discovery, you can see the assistance they have provided, but

5   we haven't charged them and we haven't referenced them in the

6   indictment.

7          It would be difficult, if not impossible, for the

8   government to outline for the defense all of the people that

9   were involved in this conspiracy because we don't know all of

10  them.

11         We've tried to identify all of those that we know

12  were main participants.  We've used the names of those that we

13  charged, and we used what we thought reasonably identified them

14  in the indictment as people we have not charged.

15         THE COURT:  Okay.  All right.  You may be seated.

16  Thank you, Mr. Miller.

17         Let me resume my effort to just synthesize what my

18  analyses and thoughts are.

19         I'll start out with what everyone understands is the

20  prevailing fundamentals of Rule 7(f) and of adequacy of

21  indictments.

22         A Bill of Particulars is warranted if it's necessary

23  to provide a defendant or her lawyer with adequate notice of

24  just what she's accused of or to allow for adequate preparation

25  for trial so that there isn't a palpable risk of being ambushed

1    or confronted with evidence or themes or positions that come as

2    a total surprise or to enable someone to determine how to

3    address charges, including whether to plead and in what way to

4    mount the defense in a way that would avoid the risk of double

5    jeopardy.

6          Those are the fundamental factors that a judge is

7    required to consider in determining whether a Bill of

8    Particulars is warranted.  Lots of cases say that.  One case

9    that I will cite is the Long case, 706 F.2d at 1054.  That's a

10   Ninth Circuit case.

11         Now, I construe the Lindsey defendants' motion,

12   particularly the way it was framed in the reply papers, to

13   complain mostly about the following additional factors where

14   they want more information in the form of a Bill of

15   Particulars.  This is my characterization, but it comes out of

16   the reply brief.

17         Of course, they want evidence of the knowledge the

18   government's -- they want the government to disclose its

19   evidence of what Dr. Lindsey and Mr. Lee knew and when they

20   knew it.  I'll get back to that point later.

21         They want to disclose -- they want the government to

22   be forced to disclose what made the payments that are referred

23   to in the indictment bribes rather than ordinary payments.

24         To that and to the following factors, I point out

25   what the Lazarenko case said in construing the adequacy of an

1    indictment for the purposes of a motion to dismiss, but it

2    really applies because it goes hand in hand to Rule 7(f) as

3    well.

4              Lazarenko, quoting some other cases, because this is

5    not a novel proposition, said, "An indictment should be read in

6    its entirety, construed according to common sense and

7    interpreted to include facts which are necessarily implied."

8              Keep those principles in mind, and I conclude that

9    specific disclosure of what made payments bribes rather than

10   ordinary payments are totally unnecessary.

11             The indictment itself contains the answer to that

12   question.  First of all, it says or it alleges that there was

13   an agreement that was illegal.  It was a conspiracy.  It was a

14   conspiracy to use these payments to obtain a basis to influence

15   the Mexican officials, so the very nature of the alleged

16   agreement converts the notion that the payments were innocent,

17   ordinary payments into ones that were intended to be bribes

18   based upon the very existence, if it can be proved, of a

19   conspiracy; and, secondly, the indictment very specifically

20   contains allegations that make it clear, simple, readily

21   available to know why something that may be contended to be or

22   may in fact have been an ordinary payment can fairly be

23   characterized and may be proven as a bribe, and that is that

24   the commissions, supposedly, were inflated.  They were doubled

25   from a standard of 15 percent to a doubled standard of 30

```
1    percent.
2           Those factors alone -- there are undoubtedly
3    others -- make it clear from what the government's theory and
4    bases for evidence would be to characterize and try to prove
5    that the payments were bribes and not ordinary payments.
6           Then the motion for a Bill of Particular asks for
7    evidence to be produced by the government as to whether the
8    payees of these moneys were in a position to influence CFE, and
9    as the disclosure in the opposition papers reflects, the
10   individuals to whom the payments were -- or for whose benefit
11   the payments were intended are identified by name, and each of
12   them at different times was the director of operations.
13          I don't think it takes any indirect or brilliant
14   insight to infer that someone who is the director of operations
15   for the company that has the power to award the contracts is in
16   a position to influence it, so I don't think that's necessary.
17          And the next item was whether the receipt of those
18   payments affected CFE's decision to buy the products, the LMC
19   products.  That's not necessary, as I tried to explain before.
20          The government is not required, if the case goes to
21   trial, to prove whether LMC actually got the contracts.  Maybe
22   there wouldn't be a prosecution if it didn't.  I don't know if
23   it did or not, but I do know that to prove a violation of the
24   FCPA, there doesn't have to be success in terms of the intended
25   payments provided all the other elements are proven, including
```

1    the invidious corrupt intent.  So I don't think that the need

2    for this additional information conforms with the standards for

3    determining whether or not a Bill of Particulars should be

4    required.

5            The Giese case -- I'm not sure if that is pronounced

6    correctly, G-I-E-S-E -- cited by both sides and referred to

7    especially by the government at Page 1181 makes it clear that

8    some of the exquisite details that the Bill of Particulars

9    seeks really are not forms of disclosure that the defendants

10   have a right to obtain.

11           That case said that the when, where and how of every

12   act in furtherance of the conspiracy is not necessary for

13   production and disclosure in the form of a Bill of Particulars.

14   Everyone knows that Rule 7(f) is not a vehicle for discovery.

15           I agree with some of the arguments of the defendants

16   and a couple of the cases that say that drowning a defendant or

17   her lawyer with hundreds of thousands of pages or hundreds of

18   thousands of documents and expecting to take comfort in the

19   fact that a lot has been turned over when it may be the

20   proverbial needle in the haystack doesn't suffice in terms of

21   the government's duties, but I don't see any basis to make that

22   finding here, particularly in light of what the government said

23   in its papers and what Mr. Miller just confirmed from the

24   lectern, so I think there's been meaningful disclosure.

25           I don't know if you've compiled the proverbial hot

```
 1    documents list.  Have you turned that over, Mr. Miller?  Have

 2    you turned over anything comparable to that?

 3             MR. MILLER:  We have not, Your Honor, and it's not

 4    because it exists and the government is withholding it, it's

 5    simply that the government is doing a lot to keep track with

 6    its own investigation and trial preparation.  And, no, Your

 7    Honor, we have not turned that over, but it's not that we are

 8    withholding it, it's simply something that we have yet to

 9    assemble.

10             THE COURT:  Okay.  Now, I have one more question for

11    you because I don't think you specifically addressed this in

12    your opposition papers.

13             The one area where I haven't made a finding and where

14    I think the desire to know more is probably heightened on the

15    part of the defense counsel is the evidence of knowledge on the

16    part of Dr. Lindsey and Mr. Lee.

17             I don't know exactly what happened here, who was in

18    touch with Aguilar, supposedly, whether there were other

19    people -- you mentioned some aid of his -- but what's your take

20    on whether the standards for enabling the defendants to prepare

21    for trial or consider their other alternatives and accomplish

22    the objectives that in rare circumstances, especially in this

23    circuit, Bills of Particulars allow?  What's your take on the

24    knowledge issue?

25             MR. MILLER:  Your Honor, my take is that Rule 7(f)
```

1    does not require the government to prove by way of a Bill of

2    Particulars or disclose by way of a Bill of Particulars how it

3    would prove the defendant's knowledge.

4            That being one part of what I'd like to respond to,

5    we have sat down with Mr. Lindsey and his attorney and

6    explained to him what we believe --

7            THE COURT:  Dr. Lindsey?

8            MR. MILLER:  Yes, Dr. Lindsey.

9            MR. HANDZLIK:  I beg your pardon, Your Honor, but

10   this meeting was off the record and was not to be referred to

11   at any time.  I believe that was the agreement we had.

12           MR. MILLER:  That's fine.

13           THE COURT:  Well, then don't go further.

14           MR. MILLER:  Okay.

15           THE COURT:  Mr. Handzlik has a legitimate complaint.

16           MR. MILLER:  Your Honor, we have disclosed a 302 that

17   we believe sets forth to Mr. Lindsey -- it's a 302 of his

18   statement to law enforcement personnel.  That I think gives the

19   defense with respect to defendant Lindsey ample disclosure as

20   to what the government might try to prove by way of knowledge

21   in this case.

22           The same can be said for Dr. Lee.  He, too, provided

23   a statement.

24           THE COURT:  Have I got the credentials of these two

25   defendants confused?  Which one is the doctor?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1              MS. LEVINE:  Mr. Lee, Your Honor.

2              THE COURT:  That's what I thought.  And Dr. Lindsey?

3              MR. HANDZLIK:  And Dr. Lindsey will go by Mr. if it's

4    easier.

5              THE COURT:  And Mr. Lee will go by Dr.?

6         (Laughter.)

7              MR. HANDZLIK:  He will, yes, Your Honor.  That's

8    true.

9              MR. MILLER:  I apologize, Your Honor.

10             Mr. Lee also gave a statement, and I believe that

11   statement -- before any agreement was ever reached with defense

12   counsel, Ms. Levine, Your Honor, the very first conversation we

13   had, I explained to her that what I believed to be the theory

14   with respect to her client --

15             MS. LEVINE:  Your Honor?

16             THE COURT:  Same objection?

17             MS. LEVINE:  Yes, Your Honor.  I don't --

18             THE COURT:  You know, I don't even think I need the

19   information.  If you simply --

20             MR. MILLER:  Well, Your Honor --

21             THE COURT:  If you simply stop and say, as you've

22   already made clear and I think in a previous hearing as well,

23   that there's been a lot of meetings, stop there.  I can draw my

24   own inferences.

25             MR. MILLER:  Suffice it to say that the idea that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    there's been no demonstration by the government about how it
 2    would prove knowledge is not accurate, and the Bill of
 3    Particulars doesn't warrant that type of relief, and the
 4    suggestion that the defense doesn't know how we'd go about
 5    proving it is not the case.
 6              THE COURT:  All right.  Well, I would have thought
 7    you would have said something in addition to that, but whether
 8    you say it or not doesn't really preclude me from saying it,
 9    which is that knowledge is always something that can be proven
10    and sometimes necessarily has to be proven through inferences
11    and not necessarily through confessions or explicit admissions
12    and concrete tangible evidence like memos or e-mails or the
13    like, and the defendants can prepare adequately for trial even
14    if the assumption is that there is no other evidence about
15    knowledge that the government could possibly point to than the
16    inferences that might be fairly drawn by a jury, and maybe not,
17    as to the manner in which the invoices over a lengthy period of
18    time were submitted and paid for, the 30 percent commission.
19    If the government can prove that it was a departure from the
20    previous basis for commissions and for compensation, all of
21    that would be a legitimate basis on closing argument, or
22    otherwise, for a lawyer, in this case the prosecutor, to point
23    to a basis to find -- for the jury to find that there was a
24    corrupt intent.
25              So I don't think that that level of detail is
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    something that is so absent or so crippling to the defense

2    counsel in this particular case that a further requirement of

3    disclosure in the form of a Bill of Particulars is warranted.

4            So those are my findings.  Now, I said earlier that I

5    would welcome, if you want to, counsel trying to talk me out of

6    it or point out things that I've overlooked or

7    mischaracterized, because I'm not above changing my mind and I

8    do it rather often in different context sometimes.

9            So would you like to be heard, Mr. Larson?

10           MR. LARSON:  Yes, Your Honor, just briefly.

11           THE COURT:  Sure.

12           MR. LARSON:  I certainly understand the Court's

13   position, and I think we certainly understand the relatively

14   low threshold for the government in responding to a request for

15   a Bill of Particulars, but there is this fundamental due

16   process issue which is at the core of Rule 7 and that's notice,

17   notice of the charges.

18           And I understand that the government's case is based

19   on inference.  I thought it was revealing for Mr. Miller to say

20   that there are certain things that must have taken place that

21   the government will never know about.  From my review of the

22   discovery and the charges, that has been the talisman for the

23   government -- at least with respect to my defendant, my client

24   in this case -- is that they are simply saying that something

25   must have happened.

1          Your Honor, I awaited filing a reply or responding to

2     the opposition to receive all of the discovery in this case,

3     and I accept Mr. Miller's representation that with the

4     exception of three 302s that are works in progress right now,

5     we have everything, a million -- over a million pages.

6          We have gone through it as best we can.  We have

7     reviewed every 302.  We have met with the government and asked

8     them for some guidance in terms of what evidence they have of

9     that critical issue that Your Honor identified, and that's

10    knowledge.

11         Ms. Aguilar is charged in only two counts, the two

12    money laundering counts, 1956(h), and there is three predicate

13    money laundering charges there.  Two are 1956 charges

14    themselves.  One is (a)(1)(b) and the other is a (a)(2), and

15    then there is a 1957.  But what's common to all three of them

16    is the government must show some knowledge that either the

17    transportation or the transactions were involved -- or involved

18    criminal activity, some prior criminal activity.

19         There is no allegation, except the bare bones

20    allegation, that she knew, and there is no evidence, including

21    the two 302s to which the government referred me, that give me

22    any guidance in terms of how I am supposed to address those

23    charges.

24         THE COURT:  These 302s were of what witness?

25         MR. LARSON:  The two 302s that the government

1    referred me to were the 302 of Mr. Bustani that we received on

2    Friday and the 302 of Ms. Aguilar's daughter who is in Mexico.

3    Those were the two 302s that were identified for me.

4                 THE COURT:  And the first person whose name you gave

5    me, I think I heard that name last time.

6                 MR. LARSON:  Right, Mr. Bustani was the account

7    person at Global.  And there is no question that --

8                 THE COURT:  At Global.

9                 MR. LARSON:  Global is the --

10                THE COURT:  He didn't work for --

11                MR. LARSON:  That's the financial institution that

12   managed the investment fund through which the government

13   alleges all the money went.

14                THE COURT:  Okay.  Did this fellow -- what's his

15   name?

16                MR. LARSON:  Bustani.  B-U-S-T-A-N-I, I believe.

17                THE COURT:  All right.  Did he deal directly at any

18   point --

19                MR. LARSON:  Yes.

20                THE COURT:  -- just answer yes or no, you don't have

21   to give me the details -- with your client?

22                MR. LARSON:  He dealt directly on a regular basis

23   with my client.  There's no question that my client together

24   with her husband had this investment account with Global.

25                THE COURT:  Right.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          MR. LARSON:  It was very important to her, and the

2    Bustani 302 and her daughter's 302 reveal why.

3          This was to be her money.  We're getting into a very

4    kind of a personal aspect of the family, but it's critical to

5    this case, and it was to be her money if something happened to

6    her husband, and if something happened to her and her husband,

7    it was to go to her daughter.

8          She has one daughter, Angela -- that's the other 302

9    that we referred to -- who's pregnant now.  And for these two

10   women, this was to be their money.  This was their trust

11   account, as it were.

12         So she was very interested and involved in the

13   account itself.  She signed checks, but all of these checks,

14   Your Honor -- all of them were filled out by other individuals.

15   They were handled by other individuals.  This was her account.

16         And that's why all these overt acts that we have in

17   these counts don't tell me anything about how to address the

18   charge that she somehow knew that these transactions were in

19   some way involving criminal activity.

20         And that's essentially the bottom line of what I'm

21   looking for, and whether it's through a Bill of Particulars,

22   whether it's through evidence, through discovery, I need

23   something to prepare a defense here.

24         And I would be happy to submit these 302s to Your

25   Honor.  I would be happy to have the government point out

1    anything else, but I continue to believe, as we have

2    represented before, that this was a botched attempt by the

3    government to get Mr. Enrique Aguilar into this country.

4              THE COURT:  Yes, and --

5              MR. LARSON:  My client sits at the MDC day in and day

6    out.

7              THE COURT:  What happened to that bail motion that

8    you were --

9              MR. LARSON:  Well, Your Honor, we are going to bring

10   it now.  We've had discussions with the government.

11             Quite frankly, I was hoping that they would dismiss

12   the charges.  They have not.  We're going to bring that bail

13   motion.  The problem is simply this, Your Honor.  She wants to

14   return to Mexico.  She does not want to have to stay here in

15   the Central District of California because she believes that

16   will require her family to come up and stay with her.  She does

17   not want to disrupt her daughter, who is expecting a child in

18   April.  She does not want to disrupt the lives of her sons.

19   Her husband is not planning to come up here, as I understand

20   it, so we're in the difficult position of requesting bail

21   with -- she's willing to waive extradition.

22             THE COURT:  Let's not get into the details.

23             MR. LARSON:  Okay.  But that's coming Your Honor, and

24   I was hoping that we could resolve this thing with the

25   government short of going down that road.

```
 1              It's going to be a difficult bail motion, and I
 2    recognize that given my client's position.  She's willing to
 3    sit in prison until March, if need be.  She knows she did not
 4    do anything wrong.  There is nothing in the indictment and
 5    there's nothing in the evidence that suggests that she knew
 6    that any of this was involved in unlawful activity, and that's
 7    where I'm at.  And whether this is a proper basis for a Bill of
 8    Particulars or a motion to dismiss or eventually a Rule 29,
 9    that's where we're at.
10              THE COURT:  If it pans out the way you described, it
11    would definitely be the basis for a Rule 29 motion, and that's
12    not a way of saying that I would grant it.
13              MR. LARSON:  I understand.
14              THE COURT:  I hear what you're saying, Mr. Larson.
15              MR. LARSON:  All right.
16              THE COURT:  I look over the overt acts that are
17    alleged in Count Seven, and I don't know what this discovery
18    that you've gotten in terms of the million pages actually
19    includes.  Probably a lot of it's totally irrelevant or
20    unhelpful, but when you see a $297,500 payment out of the
21    Global account -- this is Overt Act Ten -- for a Ferrari, and
22    the contention is that the moneys were meant to be a safety net
23    for your client and/or for her daughter --
24              MR. LARSON:  Not exclusively.  I never said
25    exclusively, Your Honor.
```

```
 1          THE COURT:  Okay.  But the point is that the
 2   indictment itself contains sufficient specificity and precision
 3   to place into your arsenal of what a lawyer does to prepare for
 4   a trial or for some other eventuality a sufficient basis to
 5   know what the government is going to be pointing to on the
 6   issue of knowledge.  It's a peculiar payment.
 7          MR. LARSON:  Fair enough on that point, Your Honor.
 8          THE COURT:  And, as I said before, as the case that I
 9   cited and many cases like it hold, these are sufficient
10   disclosures.
11          Every defense lawyer -- let me put it differently.
12   Every defense lawyer in a position like you're in, representing
13   what I think -- it's pretty clear to me -- is a peripheral
14   defendant, wants more information.
15          The question is whether you have a right to get it,
16   and I don't think you do because I think you are in a plenty
17   good position -- I can hear from the very things you're telling
18   me -- to know where you're heading in terms of carefully and
19   diligently representing your client, so that's my take on the
20   knowledge.
21          MR. LARSON:  I'll submit then, Your Honor, and I
22   think I've made the point I need to make.
23          MR. HANDZLIK:  May I be heard, Your Honor?
24          THE COURT:  Yes.
25          MR. HANDZLIK:  As Your Honor has pointed out, our
```

1    Bill of Particulars motion essentially had two aspects to it,

2    that is, the Bill of Particulars on behalf of the Lindsey

3    defendants.  The first half, or a number of the specifications

4    that we requested, simply asked for what happened, how were

5    bribes paid, what were the things that were done.

6             I submit that we do not have on the basis of the

7    indictment sufficient information to determine that, but I'm

8    not going to argue that part of it, Your Honor.

9             The other aspect that we sought and that we seek is

10   knowledge, knowledge and intent on the part of our clients.

11            While it would be helpful -- more than helpful for us

12   to know how the government intends to prove such things as a

13   foreign official -- a government official in Mexico was

14   influenced in some way or could have been influenced, that

15   these payments were somehow going to be funneled by Mr. Aguilar

16   to Mr. Moreno, all of that would be very helpful for us to

17   know, and I'm sure we'll learn that at the time of trial.  We

18   don't think that the allegations are sufficient in the

19   indictment on that.

20            THE COURT:  Let me ask you a question.

21            MR. HANDZLIK:  Yes.

22            THE COURT:  I'm not trying to cut you off.  I'll give

23   you a chance to continue.  I'm just sitting here thinking

24   through what this is really boiling down to.

25            So you have American businessmen paying a Mexican

```
 1   broker, let's put it -- I am talking about Mr. Aguilar -- and I
 2   take it -- have you been able to determine from whatever you've
 3   learned since you were brought into this case whether there was
 4   a pre-exiting relationship between Lindsey on the one hand and
 5   Aguilar on the other, pre-existing before the invoices that are
 6   alleged in the indictment came to be exchanged?
 7           MR. HANDZLIK:  There was no pre-exiting relationship.
 8           THE COURT:  Okay.  So somehow --
 9           MR. HANDZLIK:  I mean, relationship in the sense of
10   using him for business activities.  They certainly knew of Mr.
11   Aguilar.  They -- a couple of people at Lindsey had met him.
12   They had seen him in action on behalf of other clients, and it
13   was Mr. Aguilar who came to Lindsey Manufacturing to offer his
14   services because he wanted to leave -- for some reason, but he
15   wanted to leave his present employer.
16           THE COURT:  Okay.  So, anyway, you've learned how
17   they came to know each other --
18           MR. HANDZLIK:  Yes.
19           THE COURT:  -- and sought doing business?  Okay.
20           MR. HANDZLIK:  That's correct.
21           THE COURT:  And was O'Shea part of that?
22           MR. HANDZLIK:  We don't know who Mr. O'Shea is.
23           THE COURT:  He's the guy that --
24           MR. HANDZLIK:  Well, I mean I know who he is, Your
25   Honor, but he has nothing to do with the Lindsey aspect of this
```

```
 1   case.  Mr. O'Shea was someone involved in the ABB.

 2              THE COURT:  Dealing with Mr. Aguilar, right?

 3              MR. HANDZLIK:  Correct.  We had no knowledge of Mr.

 4   O'Shea or Mr. Aguilar's activities outside of his activities

 5   for us.

 6              THE COURT:  Okay.  So all you know is that Aguilar

 7   approached your clients and they agreed to do business?

 8              MR. HANDZLIK:  Well, that's a very short summary,

 9   Your Honor.

10              The Lindsey -- Dr. Lindsey and -- well, Lindsey

11   Manufacturing and its representatives had seen Mr. Aguilar when

12   he was acting on behalf of another client, a Canadian company

13   called SBB, just to make things more confusing.

14              They knew that he appeared to be effective in his

15   work for this other client.  They thought -- and they had been

16   in a situation where bids had -- that jobs had been withdrawn

17   and bids had been denied, but, you know, it went to the other

18   company, so they knew of this person.  They knew he was someone

19   who apparently was an effective commissioned sales agent; not a

20   broker, but a commissioned sales agent in Mexico, yes.

21              THE COURT:  You know, in terms of how things really

22   go down in the real world, you've got all this documentation.

23              Even informally and not through a motion filed with

24   the Court, did you ever demand from the government that in a

25   million pages or so they locate any document that they will
```

1    point to as proof of invidious knowledge or any document that

2    contains an admission like, "Make sure that this is not told to

3    somebody else," you know, the usual?  I'm being purposely

4    simplistic and general in my statements.

5            Admissions, cover-ups, reflections of something

6    furtive and elicit, did you ask them to specify precisely where

7    it is?

8            MR. HANDZLIK:  Since November of 2008, we have asked

9    the government repeatedly to point to one scrap of paper, one

10   piece of evidence, one e-mail, one document that would indicate

11   invidious knowledge and criminal intent on the part of our

12   clients.  We have asked them repeatedly for that, and there are

13   none.

14           In fact, there are contracts between CFE and Lindsey

15   for the sale of the emergency towers, and there are contacts

16   between Lindsey and Grupo, Mr. Aguilar's company, as he was

17   acting as the commission sales representative for Lindsey; not

18   an unusual practice, I might point out, Your Honor.

19           There are tons -- and literally tons -- of e-mails

20   and other documents that the government seized during a search

21   and got off of servers.  There are millions --

22           THE COURT:  You've seen the affidavit that was

23   submitted to the magistrate?

24           MR. HANDZLIK:  Yes, I have.

25           THE COURT:  Okay.

```
 1              MR. HANDZLIK:  I have seen -- I've seen -- we have

 2    seen more than one affidavit submitted to the magistrate.

 3              The affidavit that was submitted to the magistrate

 4    for purposes of the search of the Lindsey business in November

 5    of 2008 is nearly identical to the affidavit submitted to the

 6    magistrate at the time of Ms. Aguilar's arrest and is nearly

 7    identical to the later search warrant which was done to comply

 8    with the Valco requirements -- the looking at data.  Yes, we

 9    have seen that affidavit, Your Honor, and we are prepared to

10    address it.

11              I know what the affidavit says, Your Honor.  I know

12    what the indictment says.  The problem that we have and the

13    problem that's highlighted by our motion for a Bill of

14    Particulars, particularly on the subjects of knowledge and

15    intent, is having read all of those things and knowing that

16    many things in there are not accurate, how do they intend to

17    prove that Dr. Lindsey or Mr. Lee or Lindsey Manufacturing had

18    a corrupt intent, had an elicit knowledge or willfully sought

19    to violate the law.

20              THE COURT:  And I'm sure both pre-indictment and

21    since, you've put that question to the prosecutor, too.

22              MR. HANDZLIK:  Well, I certainly haven't put it to

23    the prosecution team in those words since indictment, other

24    than in the Bill of Particulars motion.

25              I mean, I might have said it, but we've said it many,
```

```
 1   many times, and the response before indictment -- and I don't

 2   mean to mischaracterize -- was, "Well, we're not going to tell

 3   you because we want your clients to come forward and tell us,"

 4   and we've said as defense counsel, "Do we need to know what the

 5   proof is?"

 6           After the indictment, we've now filed the motion for

 7   a Bill of Particulars asking the same question and in

 8   particular with regard to knowledge.

 9           Your Honor, if I may -- have I responded to the

10   Court's questions or --

11           THE COURT:  Go ahead.

12           MR. HANDZLIK:  -- whether adequately or not?

13           Your Honor, I wanted to highlight or to point out two

14   things in our motion for Bill of Particulars that I think

15   exemplify or cast a spotlight on the difficulty that we're

16   having in preparing a defense and trying to avoid surprise at

17   trial.

18           Your Honor has obviously read the papers thoroughly

19   and certainly read the indictment very carefully, and you've

20   seen that in the indictment, the government, the grand jury

21   alleges that when we hired Mr. Aguilar, we paid him more than

22   we paid our prior commissioned sales agent.

23           In fact, Your Honor, I'm not sure -- perhaps I missed

24   it -- doubling the commission, I'm not sure that that's in

25   there, but I could be mistaken.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              Be that as it may --

 2              THE COURT:  I thought it was 15 percent hiked up to

 3    30.

 4              MR. HANDZLIK:  Very well, Your Honor.

 5              Your Honor, the fact of the matter is that the proof

 6    will show, we believe, that the commissioned sales agent that

 7    was used by Lindsey prior to hiring Mr. Aguilar did nothing and

 8    was ineffective and acted the way a commissioned sales agent

 9    perhaps generally acts that sits in his office or her office

10    and waits for a bid to come in or makes phone calls, finds out

11    that there is a job, works with the client to submit a bid and

12    then pockets the commission.

13              That was what the prior commissioned sales agent did

14    for Lindsey.  It wasn't working.  They weren't getting the

15    business that they knew was there, and so when Mr. Aguilar came

16    to them and offered his services, they didn't jump at it, but

17    they certainly said, "Well, we'd like to see what you're going

18    to do."

19              I want to highlight two things.  On Page 9 of the

20    indictment, there is -- and it starts -- it's Overt Act Number

21    1, the fraudulent invoices.

22              If Your Honor -- and I'm sure you have read the

23    introductory statement.

24              THE COURT:  Yes, I did.

25              MR. HANDZLIK:  It says, "Fraudulent invoices" -- and
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   I'll skip part of it, "...fraudulently stating the following
 2   amounts were owed by defendant Lindsey Manufacturing to Grupo
 3   for commissions and for services rendered by Grupo to defendant
 4   Lindsey Manufacturing."
 5          It doesn't say for commissions.  It doesn't say a 30
 6   percent payment for commissions.
 7          The invoices received from Grupo listed other
 8   services that were apparently performed by Mr. Aguilar and by
 9   people at Grupo on behalf of Lindsey.  Mexico is a big country.
10   There are many different states or provinces.  Each one has its
11   own needs for towers.  Some are subject to hurricanes.
12   Sometime have uprisings one time or another; they stockpile.
13          The point is, Your Honor, that even under the
14   language of the indictment, it's clear that we didn't just pay
15   Mr. Aguilar or his company commissions, we paid for commissions
16   and other services, and that's what the so-called fraudulent
17   invoices state.
18          Now, the question from our point of view is how did
19   Dr. Lindsey and how did Mr. Lee know that these were fraudulent
20   invoices?  How did they know -- what is the basis for calling
21   them fraudulent?
22          Is the government saying that it charged or billed
23   for these other services and they weren't performed?  That
24   seems to be what they're saying.  It's sort of a cover-up or a
25   ruse.  I don't know why.  I mean, what's the purpose of
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    submitting a fraudulent invoice to a private company?

2            THE COURT:  Okay.  You know, the real question before

3    me today -- you are doing a fine job previewing what the trial

4    may shape out to be, and you may have a very triable case

5    here -- all of the defendants may have a very triable case

6    here -- but let me just have Mr. Miller respond on this one

7    issue of knowledge.

8            Have you turned over every piece of evidence that the

9    government has that reflects directly or indirectly information

10   that came to Dr. Lindsey's attention or Mr. Lee's attention

11   about what happened to the money once it was placed into

12   Grupo's hands and transferred into Global -- transferred into

13   Global and Grupo?

14           I'll just link it.  What evidence have you turned

15   over to the defendants that would show that they learned what

16   was going on with the money, purchases of Ferraris and boats

17   and the like?

18           MR. MILLER:  We believe that we have, Your Honor.  We

19   are still in --

20           THE COURT:  Go to the lectern, please.

21           What does that evidence consist of?

22           MR. MILLER:  Your Honor, the government has already

23   identified -- I've turned over a statement that was made by Dr.

24   Lindsey at the time that the search was executed that I believe

25   under the law demonstrates that he had knowledge or what the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   law would describe as willful blindness of the fact that these
 2   bribes were being paid.
 3          We've also turned over documents that we think -- for
 4   example, these fraudulent invoices that we are calling
 5   fraudulent --
 6          THE COURT:  Just call them invoices for the moment.
 7          MR. MILLER:  Invoices.
 8          THE COURT:  When you characterize them as fraudulent,
 9   it assumes the issue that I'm asking you to address.
10          MR. MILLER:  The invoices, we say that these invoices
11   were fraudulent, and we've identified which ones we're saying
12   are fraudulent, and we've identified why we believe they're
13   fraudulent; that they purport to explain commissions and
14   services rendered by Grupo, Mr. Enrique Aguilar's company.
15          And the reason we allege that they purport that is
16   that those were really, in essence, bribes, that that was not
17   really what they were going to pay for for services rendered.
18          THE COURT:  I get all that.  I'm very
19   familiar with --
20          MR. MILLER:  But we've -- yes, we've turned over the
21   invoices.
22          THE COURT:  The question, Mr. Miller, is have you
23   turned over every piece of evidence?
24          MR. MILLER:  Yes, Your Honor.
25          THE COURT:  Because if you have -- and whatever
```

```
 1    you've turned over and whatever you've argued here today in

 2    your opposition papers is a sufficient characterization of the

 3    universe of facts and evidence that the government intends to

 4    rely on to show knowledge, then there's nothing more you can

 5    produce anyway, and we'll see whether or not you carry the day

 6    at trial, but if you attempt to come in at trial with some

 7    piece of paper, some secretly recorded conversation, some new

 8    bit of bombshell evidence, I'm going to be all over you if

 9    there is a you to be all over after the defendants have

10    finished working over you, because that I won't permit.

11            MR. MILLER:  That is not happening, Your Honor.

12            THE COURT:  I'm not saying that you're gearing up to

13    do that.  I'm not accusing you of any misconduct, and I'm not

14    thinking that you're in the process of committing it, but I am

15    just giving you fair warning because I don't think the basis to

16    require more disclosure has been established.  I'm not going to

17    change my mind on that, but I'm going to remember and rely on

18    what you just told me.

19            MR. MILLER:  Now, Your Honor, I would point out that

20    we are still investigating in some ways, and if we get it, we

21    plan to turn over what we're required to turn over, but I don't

22    want to suggest that at this point --

23            THE COURT:  It would be in your interest when you

24    turn over any additional information to file a notice of

25    production or a notice of disclosure and specify what it is so
```

```
 1    I don't preside over trial with an incomplete understanding of

 2    what happened.

 3              MR. MILLER:  Okay, Your Honor.

 4              THE COURT:  Because this is going to be a big issue.

 5    It's very clear to me what this battleground will be at the

 6    trial, real clear.  I'm looking forward to it.  I think it will

 7    be an interesting trial.

 8              All right.  Did you want to be heard?  I thought that

 9    Mr. Handzlik was speaking for you.  Go ahead, Ms. Levine.

10              MS. LEVINE:  And I'm stealing Mr. Handzlik's

11    notebook, Your Honor.

12              THE COURT:  But please don't go over the same ground.

13    I'm not saying you were planning to.

14              MS. LEVINE:  I won't, Your Honor.

15              I have a few points.  The first has to do with the

16    Court's characterization of the Kay case, and I'd just ask the

17    Court to refrain from deciding at this point what the jury

18    instructions will be in this case.  Kay is the only case, but

19    scholars think it's going to be an outlier, given the amount of

20    cases that are coming out --

21              THE COURT:  Believe me, I haven't thought about the

22    precise instructions.  I'm not bound by a Fifth Circuit

23    decision.

24              I can see the facts are very different in that case,

25    and the real issue in that case is what is the core conduct and
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   whether or not there is a basis to establish a FCPA violation
 2   when you're getting past customs without paying required taxes;
 3   very different than a bribe or a contract.
 4           I know what the case was about.  It's not going to
 5   govern what the instructions say, but it is good law at the
 6   moment.
 7           MS. LEVINE:  That's right, Your Honor.  It is
 8   actually about the only case.
 9           The Bourke case cited by the government in its
10   opposition to Mr. Larson's brief is not a case yet, it's just a
11   district court -- not opinion, but a district court ruling.  It
12   is up on appeal.  It's fully briefed.  It does involve a
13   willful blindness instruction.  It may have some application,
14   although it only involves a conspiracy and no substantive
15   allegations.  No substantive charges within the Bourke case, so
16   it may also have no application here.
17           Jefferson, which is the only other case pending,
18   mostly involves non-FCPA case charges.
19           So the only instruction we may have -- and I don't
20   think we will by the time this matter goes to trial -- would be
21   Bourke or Kay, and then the scholars that talk about those
22   cases somewhat seemingly endlessly.
23           The Court asked about --
24           THE COURT:  I hope the lawyers won't discuss them
25   seemingly endlessly.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          MS. LEVINE:  I'm not sure that this Court would let

2    that happen, Your Honor.

3          The Court asked about Footnote 2 and the disclosures

4    in Footnote 2, and I wanted to talk about where the government

5    does not talk about who people are.

6          The government's comments to this Court was that it

7    told us who Official 1 and Official 2 were and then it says

8    that Cesar Aguilar -- Cesar Moreno is also one of the unnamed

9    people in the indictment, and I'd just like to comment first

10   about Official 2 and the government's comments on that in its

11   papers.

12         It cites to a Bates stamped page in discovery and

13   says we should have known that was Official 2 and they turned

14   it over in discovery.  Your Honor, in the discovery in this

15   case, I don't know if it's a billion pages, but it's certainly

16   not hundreds of thousands of pages, as the Court used --

17         THE COURT:  You are talking about Arturo Hernandez?

18         MS. LEVINE:  Arturo Hernandez, the page of discovery

19   that the government cited to doesn't say Official 2 on it.

20   What it is, within well over --

21         THE COURT:  But why does it matter?  You know now who

22   they are wedded to as identifying and being bound by the

23   identification as to who Official 1 was or is and the same as

24   to Official 2.  Why should I care whether the Bates page

25   adequately discloses that?  You got it now.

```
 1              MS. LEVINE:  That's true, Your Honor, but in terms of
 2    the rest of the people -- so, for example, if the Court looks
 3    at Page 14 of the indictment, Line 8, it says, "Defendant
 4    Enrique Aguilar and another individual."  We don't know who
 5    "another individual" is.  That's not Official 1.  That's not
 6    Official 2.  That's somebody that's not named.
 7              There are other places where it will say -- and I'm
 8    looking for other places in the indictment.
 9              We are -- for example, it says on Page 9, Lines 4
10    through 7, "In furtherance of the conspiracy and to accomplish
11    its objects, defendants Enrique Aguilar, Lindsey Manufacturing,
12    Lindsey and Lee, together with others known and unknown to the
13    grand jury."  We don't know who those are.
14              If it's Officials 1 and 2, we'd ask that the
15    government be bound by saying who that is.  If it's others and
16    it's just somewhere in the mass of 1.5 trillion words, I don't
17    think that's enough, Your Honor, to go forward.
18              So what I would ask is that the Court reconsider its
19    ruling on those names or those unnamed people -- unnamed but
20    identified in terms of the government knows who they are and
21    the government's identified them in their mind -- and let us
22    know, whether it's by a listing, like they did, I believe, in
23    O'Shea, or whether it's just to say it in open court, but
24    somehow or other bind themselves to who those people are.
25              THE COURT:  Okay.  I don't know what happened in
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    O'Shea.  I don't think anybody submitted anything to me on

 2    that.

 3              MS. LEVINE:  I believe that there was a list.  I

 4    don't know.

 5              THE COURT:  But I haven't seen it.

 6              Look, you are going to get, if you haven't already

 7    gotten it, the names of all the witnesses, so I take it that

 8    what you're concerned about now is that somehow the government

 9    will elicit testimony from a witness, a witness you would have

10    already known about, had a chance to look into, but this

11    witness is going to then disclose for the first time to your

12    knowledge somebody who might have been within that

13    characterization of others known and unknown in Paragraph 4 on

14    Page 9.  You're going to learn about it for the first time that

15    way.

16              Is that what you're concerned about?

17              MS. LEVINE:  Well, what I'm really --

18              THE COURT:  Because if you have all of the witnesses

19    who are going to be the basis for testimony before the jury,

20    what do you not have?

21              MS. LEVINE:  Well, I might not have people that could

22    help us.  So if there is somebody that's identified in here as

23    another individual that is an actor, I think it's incumbent on

24    the government so that we avoid surprise so that we don't go

25    into trial with this mass of documents not finding the key
```

```
 1   documents.

 2             The Court asked what evidence --

 3             THE COURT:  What case where there is a conspiracy

 4   charge and the usual litany of "together with persons known and

 5   unknown" or other identified individuals -- I won't get into

 6   confidential informants.  That's a different category.  What

 7   case would not then warrant mandatory disclosure?  Why is this

 8   case different from every other case --

 9             MS. LEVINE:  Well, the case --

10             THE COURT:  -- as to that narrow point you're making

11   now?

12             MS. LEVINE:  You know, Your Honor, the case isn't any

13   different in terms of having those words, but each case rises

14   and falls on the facts of its case, not facts inherent in the

15   case but, as we sit here, what the lawyers deal with

16   timing-wise.

17             The Court asked Mr. Larson when he's filing a bail

18   motion.  Certainly, the fact that his client is in custody has

19   impacted how fast the lawyers will deal with this case, but we

20   are also burdened with an inordinate amount of discovery,

21   perhaps as big as almost any case I've ever dealt with.

22             And to get through that, it requires -- and, luckily,

23   the law gives this Court the flexibility.  7(f) is one of the

24   most flexible rules that this Court has, and the Court can ask

25   the government to come forward with a little more than they
```

1    might come forward with in another case.

2              And I would ask the Court what's the harm to the

3    government of doing that.  It's not a case where there's

4    danger.  The government's been investigating this matter since

5    2005, for five years.

6              They have been investigating Dr. Lindsey and Mr. Lee

7    since the search warrant issued two years ago.  They have had

8    agents looking through this.  We've known about it, but we

9    don't know their allegations.

10             You asked whether we've asked the government what's

11   going on.  They say in typical fashion, "Ask your client."

12   That doesn't help us, Your Honor.  What helps us is to know

13   what they're saying our clients did and others did in the

14   indictment pending against us, and that's all we're asking for

15   in this case, and I would suggest it's different.

16             THE COURT:  Okay.  Okay.  Let me ask a question to

17   Mr. Miller.

18             I'm not going to change my view on the knowledge

19   issue.  I think that's the principle -- I'm not the lawyer, so

20   I don't want to be presumptuous, but I bet that turns out to be

21   if not the main, at least one of the two or three main issues

22   at the trial, but you just heard Ms. Levine -- please go to the

23   lectern.

24             You just heard Ms. Levine mention two or three

25   portions of the First Superseding Indictment, so have you

1    disclosed to the government the names of the persons known?

2    You can't disclose the ones unknown unless they recently came

3    to your knowledge.

4              Every person who has percipient knowledge of exactly

5    what went into the states of mind of Lee and Lindsey --

6              MR. MILLER:  Your Honor --

7              THE COURT:  -- have you disclosed it?  Just say yes

8    or no.

9              MR. MILLER:  Yes.  We've turned over all of the

10   discovery, and the way that we --

11             THE COURT:  I don't mean the documents.  I'm talking

12   about --

13             MR. MILLER:  Well, the witnesses that would ever come

14   into trial to say -- I don't know what the concern is, but

15   let's say that there's someone that's an "other" out there that

16   we've interviewed and we plan to somehow bring into trial and

17   the defense is surprised by that, we've agreed to turn over

18   every witness statement, so the notion that someone is going to

19   show up unexpectedly and fit under this definition of other and

20   the defense won't know about it is unfounded.  That's not going

21   to happen.

22             We are giving them -- everyone we are talking to,

23   we're identifying.  We're giving them their statements as to

24   what those witnesses are telling us.  And those are the

25   witnesses, as the Court pointed out, that if we intend to rely

 1   on at trial, they are going to get a list of them and there is

 2   going to be no surprise, so --

 3            THE COURT:  When will they get that list?

 4            MR. MILLER:  Well, Your Honor, because we are still

 5   interviewing several people, we think that we'll be in a

 6   position to hopefully provide a list of witnesses a month in

 7   advance of trial.

 8            We're not trying to surprise the defense.  There is

 9   just some things that we still need to do, but --

10            THE COURT:  Well, you know, the defendants made a big

11   point out of what Judge Molloy did in the W.R. Grace case about

12   requiring disclosures a full year before trial, and then they

13   weren't made, apparently.  I remember learning about that,

14   so --

15            MR. MILLER:  Your Honor, that's an unfortunate --

16            THE COURT:  I'm not going to permit a hope that it be

17   done by a month before trial.  I'm ordering -- we have a March

18   29th trial date?

19            MR. MILLER:  That's correct, Your Honor.

20            THE COURT:  Okay.  Well, I want all the witnesses

21   disclosed by not later than February 15th.

22            I don't think it's going to be productive for me to

23   hear from the lawyers further.  You're all good lawyers.  I

24   enjoy hearing your arguments.  I'm not going to change my

25   rulings on the pending motions, but I am also not going to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   prohibit a further motion either, under 7(f) or otherwise, if

 2   new developments come to the attention of the lawyers, the

 3   defense lawyers, that give them a stronger basis -- or at least

 4   a new basis to claim that they can't prepare adequately for

 5   trial and deal with the three elements, the broad objectives of

 6   having additional information provided in the form of 7(f).

 7             I have another engagement I have to turn to now, so

 8   with that, I think we're going to --

 9             MR. LARSON:  Your Honor, I'm very sorry, a very quick

10   housekeeping matter.  Ms. Aguilar has glasses that are

11   defective.  We have gone to the prison authorities on November

12   2nd and 11th.  We're trying to --

13             THE COURT:  We have a form, Mr. Larson.  I bet you

14   are familiar with it.  I will sign it now.

15             MR. LARSON:  Very good.

16             THE COURT:  You want --

17             MR. LARSON:  We want -- basically directing the

18   marshal -- the warden to provide her a prescription and --

19             THE COURT:  Perhaps an examination and a

20   prescription?

21             MR. LARSON:  For new glasses.  They told us two to

22   three months.

23             THE COURT:  All right.  I'll fill this in back in

24   chambers and we'll take care of it today.

25             Mr. Handzlik?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        MR. HANDZLIK:  No, I'm just standing to leave, Your

2   Honor.

3        THE COURT:  Okay.  Thank you.  We're adjourned.

4      *(Proceedings concluded.)*

5                        --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1

2                                    CERTIFICATE

3

4        I hereby certify that pursuant to Section 753,

5    Title 28, United States Code, the foregoing is a true and

6    correct transcript of the stenographically reported

7    proceedings held in the above-entitled matter and that the

8    transcript page format is in conformance with the

9    regulations of the Judicial Conference of the United States.

10

11   Date: JANUARY 4, 2010

12

13                        _____

14                        Cindy L. Nirenberg, CSR No. 5059

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**$**

$297,500 [1] 30/20

**-**

--oOo [1] 53/5

**.**

...fraudulently [1] 39/1

**0**

0211 [1] 2/15

**1**

1.5 [1] 46/16
1026 [1] 8/17
1031 [1] 5/4
1033 [1] 8/19
1054 [1] 17/9
1126 [1] 2/14
1181 [1] 20/7
11th [1] 52/12
13Th [1] 2/4
14 [3] 1/18 5/1 46/3
1400 [1] 2/8
15 [2] 18/25 38/2
15th [1] 51/21
18 [2] 12/18 12/22
1956 [2] 26/12 26/13
1957 [1] 26/15

**2**

20005 [1] 2/9
2005 [1] 49/5
2008 [2] 35/8 36/5
2010 [3] 1/18 5/1 54/11
202-514-8122 [1] 2/10
213-622-4750 [1] 3/6
213-894-2434 [1] 2/5
213-977-0211 [1] 2/15
222 [1] 8/13
2434 [1] 2/5
2450 [1] 2/19
28 [1] 54/5
29 [2] 30/8 30/11
29th [1] 51/18
2nd [1] 52/12

**3**

30 [4] 18/25 24/18 38/3 39/5
302 [10] 11/17 13/23 22/16 22/17 26/7
  27/1 27/2 28/2 28/2 28/8
302s [14] 10/3 10/14 10/17 10/20 10/21
  10/24 12/2 12/6 26/4 26/21 26/24 26/25
  27/3 28/24
310-586-6542 [1] 2/21
312 [2] 1/24 2/4
3:00 [2] 1/19 5/2

**4**

400-E [1] 2/20
40th [1] 3/5
438 [1] 1/24
4404 [1] 2/9
4750 [1] 3/6

**5**

5059 [2] 1/23 54/14
515 [1] 3/5
564 [1] 8/17

**6**

6542 [1] 2/21
6th [1] 13/1

**7**

706 [1] 17/9
753 [1] 54/4

**8**

8122 [1] 2/10

**9**

90012 [2] 1/24 2/5
90017 [1] 2/15
90071 [1] 3/6
90404 [1] 2/20

**A**

ABB [1] 34/1
able [1] 33/2
about [32] 13/17 15/1 15/10 15/12 16/1
  17/13 24/1 24/4 24/14 25/21 28/17 33/1
  40/11 43/21 44/4 44/8 44/21 44/23 45/3
  45/4 45/5 45/10 45/17 47/8 47/10 47/14
  47/16 49/8 50/12 50/20 51/11 51/13
above [2] 25/7 54/7
above-entitled [1] 54/7
absent [2] 14/5 25/1
absolutely [1] 6/15
accept [1] 26/3
accomplish [2] 21/21 46/10
according [1] 18/6
account [6] 27/6 27/24 28/11 28/13
  28/15 30/21
accurate [2] 24/2 36/4
accused [3] 7/3 8/12 16/24
accusing [1] 42/13
achieve [1] 6/21
achieved [1] 7/25
act [3] 20/12 30/21 38/20
acted [1] 38/8
acting [2] 34/12 35/17
action [1] 33/12
activities [3] 33/10 34/4 34/4
activity [4] 26/18 26/18 28/19 30/6
actor [1] 47/23
acts [3] 28/16 30/16 38/9
actual [1] 8/5
actually [7] 7/18 7/21 7/25 14/19 19/21
  30/18 44/8
addition [2] 11/2 24/7
additional [5] 8/4 17/13 20/2 42/24 52/6
address [6] 14/9 17/3 26/22 28/17 36/10
  41/9
addressed [1] 21/11
adequacy [2] 16/20 17/25
adequate [2] 16/23 16/24
adequately [4] 24/13 37/12 45/25 52/4
adjective [1] 10/5
adjourned [1] 53/3
admission [1] 35/2
admissions [2] 24/11 35/5
advance [1] 51/7
advantage [1] 7/21
affected [1] 19/18
affidavit [7] 35/22 36/2 36/3 36/5 36/9
  36/11
after [4] 11/7 13/5 37/6 42/9
afternoon [6] 5/8 5/12 5/13 5/17 5/18 6/2
against [1] 49/14
agent [6] 34/19 34/20 37/22 38/6 38/8
  38/13
agents [1] 49/8
ago [1] 49/7
agree [1] 20/15
agreed [2] 34/7 50/17
agreement [4] 18/13 18/16 22/11 23/11

AGUILAR [30] 1/10 2/13 5/5 7/1 8/11
  8/13 8/20 13/7 16/23 19/24 24/20 24/20
  26/11 29/3 32/15 33/1 33/5 33/11 33/13
  34/2 34/6 34/11 37/21 38/7 38/15 39/8
  39/15 45/8 46/4 46/11 52/10
Aguilar's [6] 12/19 27/2 34/4 35/16 36/6
  41/14
ahead [2] 37/11 43/9
AHM [1] 1/9
aid [1] 21/19
all [38] 6/8 9/6 10/17 10/21 14/6 14/7
  16/8 16/9 16/11 16/15 18/12 19/25 24/6
  24/20 26/2 26/15 27/13 27/17 28/13
  28/14 28/16 30/15 32/16 34/6 34/22
  36/15 40/5 41/18 42/8 42/9 43/8 47/7
  47/18 49/14 50/9 51/20 51/23 52/23
allegation [2] 26/19 26/20
allegations [4] 18/20 32/18 44/15 49/9
allege [2] 7/17 41/15
alleged [5] 7/18 8/8 18/15 30/17 33/6
alleges [3] 18/12 27/13 37/21
allow [2] 16/24 21/23
almost [1] 48/21
alone [1] 19/2
already [4] 23/22 40/22 47/6 47/10
also [9] 3/9 10/25 12/14 23/10 41/3
  44/16 45/8 48/20 51/25
alternative [2] 6/19 9/17
alternatives [1] 21/21
although [4] 44/14
always [1] 24/9
am [4] 26/22 33/1 42/14 51/25
ambushed [1] 16/25
AMERICA [1] 1/7
American [1] 32/25
amount [2] 43/19 48/20
amounts [1] 39/2
ample [1] 22/19
analyses [1] 16/18
and Martinique [1] 6/3
and/or [1] 30/23
ANGELA [6] 1/10 5/5 5/14 6/25 7/2 28/8
ANGELES [6] 1/17 1/24 2/5 2/15 3/6 5/1
another [5] 34/12 39/12 46/4 46/5 47/23
  49/1 52/7
answer [2] 18/11 27/20
answering [1] 12/20
any [22] 6/11 7/1 8/4 8/11 8/12 9/2 10/13
  14/11 14/12 19/13 20/21 22/11 23/11
  26/22 27/17 30/6 34/25 35/1 42/13 42/24
  48/12 48/21
anybody [2] 6/13 47/1
anything [5] 21/2 28/17 29/1 30/4 47/1
anyway [2] 33/16 42/5
apologize [1] 23/9
apparently [3] 34/19 39/8 51/13
appeal [1] 44/12
appearances [3] 2/1 3/1 5/7
appeared [1] 34/14
appearing [2] 5/9 5/14
applicable [1] 14/2
application [2] 44/13 44/16
applies [1] 18/2
approached [1] 34/7
appropriate [1] 7/2
April [1] 29/18
are [80]
are referenced [1] 15/4
area [1] 21/13
argue [1] 32/8
argued [1] 42/1
argument [1] 24/21
arguments [2] 20/15 51/24

**A**
around [1]  7/11
arrest [1]  36/6
arsenal [1]  31/3
Article [1]  8/13
Arturo [2]  45/17 45/18
as [52]  6/6 8/9 9/11 9/24 10/23 10/23
12/16 13/19 13/20 14/1 14/23 14/25
15/17 15/21 15/25 16/14 17/1 18/2 18/23
19/7 19/9 19/19 22/19 23/21 23/22 24/17
26/6 28/11 29/1 29/19 31/8 31/8 31/25
32/12 35/1 35/16 35/17 37/4 38/1 41/1
41/8 45/16 45/22 45/23 45/23 47/22
48/10 48/15 48/21 48/21 50/23 50/25
ask [9]  32/20 35/6 43/16 46/14 46/18
48/24 49/2 49/11 49/16
asked [11]  5/23 26/7 32/4 35/8 35/12
44/23 45/3 48/2 48/17 49/10 49/10
asking [3]  37/7 41/9 49/14
asks [1]  19/6
aspect [3]  28/4 32/9 33/25
aspects [1]  32/1
assemble [1]  21/9
asserted [1]  8/24
assertion [1]  10/8
assistance [2]  5/15 16/4
assistant [3]  2/3 2/8 15/20
assumes [1]  41/9
assumption [1]  24/14
assurance [1]  13/2
attempt [2]  29/2 42/6
attention [4]  9/14 40/10 40/10 52/2
attorney [10]  2/2 2/3 2/8 2/14 2/18 2/19
3/4 3/4 5/10 22/5
authorities [1]  14/4 52/11
available [1]  18/21
Avenue [2]  2/8 2/19
avoid [3]  17/4 37/16 47/24
awaited [1]  26/1
award [1]  19/15

**B**
B-U-S-T-A-N-I [1]  27/16
back [2]  17/20 52/23
bail [5]  29/7 29/12 29/20 30/1 48/17
balance [1]  12/25
bare [1]  26/19
based [2]  18/18 25/18
bases [1]  19/4
basically [1]  52/17
basis [18]  7/3 8/23 18/14 20/21 24/20
24/21 24/23 27/22 30/7 30/17 31/11 34/6
39/20 42/15 44/1 47/19 52/3 52/4
Bates [2]  45/12 45/24
battleground [1]  43/5
be [76]
because [18]  6/23 11/3 16/9 18/2 18/4
21/4 21/11 25/7 29/15 31/16 33/14 37/3
41/25 42/10 42/15 43/4 47/18 51/4
been [28]  7/21 7/22 8/7 8/24 9/25 10/25
11/10 12/2 12/2 12/6 13/3 13/15 13/24
18/22 20/19 20/24 23/23 24/1 25/22
32/14 33/2 34/15 34/16 34/17 42/16
47/12 49/4 49/6
before [12]  9/20 11/18 19/19 21/11 29/2
31/8 33/5 37/1 40/2 47/19 51/12 51/17
beg [1]  22/9
behalf [9]  5/9 5/20 6/3 6/18 8/24 32/2
33/12 34/12 39/9
behind [1]  10/24
being [6]  9/11 16/25 22/4 35/3 41/2
45/22

**C**
CA [4]  2/5 2/15 2/20 3/6
CALIFORNIA [5]  1/2 1/17 1/24 5/1 29/15
call [2]  12/15 41/6
called [3]  9/14 34/13 39/16
calling [3]  5/4 39/20 41/4
calls [1]  38/10
came [15]  9/11 15/23 16/4 18/18 18/22
22/22 23/23 24/9 24/13 24/19 26/6 31/17
41/23 42/24 48/24
can't [2]  50/2 52/4
Canadian [1]  34/12
care [2]  45/24 52/24
carefully [2]  31/18 37/19
carry [1]  42/5
case [62]
cases [1]  17/8 18/4 20/16 31/9 43/20

believe [18]  10/17 14/16 15/6 15/10
15/10 18/10 19/24 22/10 36/2 37/24 38/2
38/6 40/18 40/24 41/12 43/21 46/22 47/3
believed [1]  23/13
believes [1]  29/15
benefit [1]  19/10
benefits [3]  7/18 7/25 8/5
best [1]  26/6
bet [2]  49/20 52/13
between [3]  33/4 35/14 35/16
Beyond [1]  15/9
bid [2]  38/10 38/11
bids [2]  34/16 34/17
big [4]  39/9 43/4 48/21 51/10
Bill [27]  6/19 6/24 8/3 9/9 9/19 10/2 14/2
16/22 17/7 17/14 19/6 20/3 20/8 20/13
22/1 22/2 24/2 25/3 25/15 28/21 30/7
32/1 32/2 36/13 36/24 37/7 37/14
billed [1]  39/22
billion [1]  45/15
Bills [3]  6/20 14/8 21/23
bind [1]  46/24
bit [1]  42/8
blindness [2]  41/1 44/13
boats [1]  40/16
body [1]  5/23
boiling [1]  32/24
bombshell [1]  29/2
bones [1]  26/19
both [3]  5/12 20/6 36/20
bottom [1]  28/20
Boulevard [2]  2/14
bound [3]  43/22 45/22 46/15
Bourke [3]  44/9 44/15 44/21
bribe [2]  18/23 44/3
bribes [8]  7/19 17/23 18/9 18/17 19/5
32/5 41/2 41/16
brief [2]  17/16 44/10
briefed [1]  44/12
briefly [1]  25/10
brilliant [1]  19/13
bring [4]  12/13 29/9 29/12 50/16
broad [1]  52/5
broker [2]  33/1 34/20
brought [3]  6/18 13/22 33/3
burdened [1]  48/20
business [5]  33/10 33/19 34/7 36/4
38/15
businessmen [1]  32/25
busino [2]  3/4 6/3
Bustani [4]  27/1 27/6 27/16 28/2
buy [1]  19/18

certain [2]  15/11 25/20
certainly [8]  25/12 25/13 33/10 36/22
37/19 38/17 45/15 48/18
CERTIFICATE [1]  54/2
certify [1]  54/4
Cesar [3]  15/5 45/8 45/8
CFE [2]  19/8 35/14
CFE's [1]  19/18
chambers [1]  52/24
chance [2]  32/23 47/10
change [4]  9/15 42/17 49/18 51/24
changing [1]  25/7
characterization [1]  17/15 42/2 43/16
47/13
characterize [2]  19/4 41/8
characterized [1]  18/23
charge [4]  7/9 8/19 28/18 48/4
charged [8]  14/23 14/25 15/24 16/5
16/13 16/14 26/11 39/22
charges [13]  7/6 7/7 7/17 8/18 17/3
25/17 25/22 26/13 26/13 26/23 29/12
44/15 44/18
checks [2]  28/13 28/13
child [1]  29/17
CINDY [2]  1/23 54/14
circuit [5]  8/20 14/4 17/10 21/23 43/22
circumstance [1]  14/6
circumstances [1]  21/22
cite [2]  14/1 17/9
cited [6]  7/11 8/16 20/6 31/9 44/9 45/19
cites [1]  45/12
claim [1]  52/4
claimed [3]  6/24 7/5 7/24
clause [1]  14/23
clear [10]  7/22 7/23 18/20 19/3 20/7
23/22 31/13 39/14 43/5 43/6
client [14]  6/18 23/14 25/23 27/21 27/23
27/23 29/5 30/23 31/19 34/12 34/15
38/11 48/18 49/11
client's [1]  30/2
clients [6]  32/10 33/12 34/7 35/12 37/3
49/13
closing [1]  24/21
CM [1]  15/6
co [6]  14/7 14/14 15/4 15/14 15/17 15/25
co-conspirators [6]  14/7 14/14 15/4
15/14 15/17 15/25
Code [1]  54/5
Colorado [1]  2/19
come [10]  17/1 29/16 29/19 37/3 38/10
42/6 48/25 49/1 50/13 52/2
comes [1]  17/15
comfort [1]  20/18
coming [2]  29/23 43/20
comment [1]  45/9
comments [3]  4/3 45/6 45/10
commission [4]  24/18 35/17 37/24
38/12
commissioned [6]  34/19 34/20 37/22
38/6 38/8 38/13
commissions [8]  18/24 24/20 39/3 39/5
39/6 39/15 39/15 41/13
committing [1]  42/14
common [2]  18/6 26/15
company [10]  1/11 2/17 5/6 19/15 34/12
34/18 35/16 39/15 40/1 41/14
comparable [1]  21/2
compensation [1]  24/20

44/22
cast [1]  37/15
category [1]  48/6
central [3]  1/2 14/10 29/15

# C

**compiled** [1]  20/25
**complain** [1]  17/13
**complaint** [1]  22/15
**completed** [2]  10/17 12/7
**compliance** [1]  7/10
**comply** [1]  36/7
**concern** [1]  50/14
**concerned** [2]  47/8 47/16
**conclude** [1]  18/8
**concluded** [1]  53/4
**conclusion** [1]  9/15
**conclusions** [1]  9/20
**concrete** [1]  24/12
**conduct** [1]  43/25
**conducted** [1]  12/24
**confer** [1]  12/8
**Conference** [1]  54/9
**confessions** [1]  24/11
**confidential** [1]  48/6
**confirm** [1]  9/1
**confirmed** [1]  20/23
**conformance** [1]  54/8
**conforms** [1]  20/2
**confronted** [1]  17/1
**confused** [1]  22/25
**confusing** [1]  34/13
**consider** [2]  17/7 21/21
**consist** [1]  40/21
**conspiracy** [16]  7/5 7/9 14/17 14/23
 14/25 15/10 15/12 16/3 16/9 18/13 18/14
 18/19 20/12 44/14 46/10 48/3
**conspirators** [7]  14/7 14/14 15/1 15/4
 15/14 15/17 15/25
**construe** [4]  9/11 10/7 14/10 17/11
**construed** [1]  18/6
**construing** [1]  7/14 7/23 17/25
**contacts** [1]  35/15
**contains** [4]  18/11 18/20 31/2 35/2
**contended** [1]  18/21
**contention** [5]  7/4 7/7 8/1 8/4 30/22
**context** [1]  25/8
**continue** [2]  29/1 32/23
**CONTINUED** [1]  3/1
**contours** [2]  8/13 8/22
**contract** [2]  7/20 44/3
**contracts** [4]  8/5 19/15 19/21 35/14
**conversation** [2]  23/12 42/7
**converts** [1]  18/16
**COPY** [1]  1/6
**core** [2]  25/16 43/25
**correct** [10]  9/2 9/4 9/5 11/6 11/9 13/3
 33/20 34/3 51/19 54/6
**correctly** [1]  20/6
**corrupt** [4]  7/19 20/1 24/24 36/18
**could** [6]  8/10 24/15 29/24 32/14 37/25
 47/21
**counsel** [13]  2/1 3/1 5/7 5/10 9/10 9/15
 12/8 15/8 21/15 23/12 25/2 25/5 37/4
**Count** [1]  30/17
**country** [2]  29/3 39/9
**counts** [7]  7/3 7/10 8/9 8/11 26/11 26/12
 28/17
**couple** [2]  20/16 33/11
**course** [2]  12/24 17/17
**court** [26]  1/1 1/23 4/3 4/4 4/7 5/22
 12/13 34/24 43/17 44/11 44/11 44/23
 45/1 45/3 45/6 45/16 46/2 46/18 46/23
 48/2 48/17 48/23 48/24 48/24 49/2 50/25
**Court's** [4]  5/22 25/12 37/10 43/16
**courtroom** [1]  5/24
**cover** [3]  12/19 35/5 39/24
**cover-up** [1]  39/24
**cover-up** [1]  39/24
**CR10** [2]  1/9 5/4
**CR10-1031** [1]  5/4
**CR10-1031-AHM** [1]  1/9
**credentials** [1]  22/24
**criminal** [5]  2/7 26/18 26/18 28/19 35/11
**crippling** [1]  25/1
**critical** [2]  26/9 28/4
**Crowell** [1]  3/3
**CSR** [2]  1/23 54/14
**currently** [1]  8/7
**custody** [2]  5/15 48/18
**customs** [1]  44/2
**cut** [1]  32/22

# D

**danger** [1]  49/4
**data** [1]  36/8
**date** [2]  51/18 54/11
**daughter** [5]  27/2 28/7 28/8 29/17 30/23
**daughter's** [1]  28/2
**day** [4]  11/17 29/5 29/5 42/5
**DC** [1]  2/9
**deal** [4]  27/17 48/15 48/19 52/5
**Dealing** [1]  34/2
**dealt** [2]  27/22 48/21
**DECEMBER** [3]  1/18 5/1 13/1
**deciding** [1]  43/17
**decision** [5]  7/11 8/16 8/17 19/18 43/23
**defect** [2]  7/24 8/7
**defective** [1]  52/11
**defects** [1]  7/5
**defendant** [11]  2/13 3/3 11/24 16/23
 20/16 22/19 25/23 31/14 39/2 39/3 46/3
**defendant's** [1]  22/3
**defendants** [23]  1/13 2/17 6/20 8/3 9/19
 10/24 12/17 13/8 13/18 13/25 14/12
 14/25 20/9 20/15 21/20 22/25 24/13 32/3
 40/5 40/15 42/9 46/11 51/10
**defendants'** [3]  10/2 14/11 17/11
**defense** [17]  15/8 16/8 17/4 21/15 22/19
 23/11 24/4 25/1 28/23 31/11 31/12 37/4
 37/16 50/17 50/20 51/8 52/3
**definitely** [1]  30/11
**definition** [1]  50/19
**demand** [1]  34/24
**demonstrates** [1]  40/25
**demonstration** [1]  24/1
**denied** [1]  34/17
**Department** [2]  2/6 5/11
**departure** [1]  24/19
**deprive** [1]  9/10
**describe** [1]  41/1
**described** [1]  30/10
**desire** [1]  21/14
**detail** [1]  24/25
**details** [3]  20/8 27/21 29/22
**determine** [3]  17/2 32/7 33/2
**determining** [1]  17/7 20/3
**developed** [1]  12/3
**developments** [1]  12/3
**did** [19]  11/18 11/20 19/23 27/14 27/17
 30/3 34/24 35/6 38/7 38/13 38/24 39/18
 39/19 39/20 43/8 46/22 49/13 49/13
 51/11
**didn't** [7]  8/6 10/4 13/7 19/22 27/10
 38/16 39/14
**different** [11]  8/19 13/21 19/12 25/8
 39/10 43/24 44/3 48/6 48/8 48/13 49/15
**differently** [1]  31/11
**difficult** [3]  16/7 29/20 30/1
**difficulty** [1]  37/15

**diligently** [1]  31/19
**diligently** [1]  31/19
**directly** [3]  27/17 27/22 40/9
**director** [2]  19/12 19/14
**disclose** [6]  17/18 17/21 17/22 22/2
 47/11 50/2
**disclosed** [7]  14/19 14/21 15/1 22/16
 50/1 50/7 51/21
**discloses** [1]  45/25
**disclosure** [10]  18/9 19/9 20/9 20/13
 20/24 22/19 25/3 42/16 42/25 48/7
**disclosures** [4]  8/5 31/10 45/3 51/12
**discovery** [16]  15/7 15/15 15/16 15/22
 16/4 20/14 25/22 26/2 28/22 30/17 45/12
 45/14 45/14 45/18 48/20 50/10
**discuss** [1]  44/24
**discussions** [2]  15/7 29/10
**dismiss** [9]  6/17 6/18 6/22 7/12 9/8
 13/10 18/1 28/1 29/11 30/8
**dismissing** [1]  8/24
**disrespect** [1]  7/1
**disrupt** [2]  29/17 29/18
**district** [6]  1/1 1/2 1/3 29/15 44/11 44/11
**DIVISION** [2]  1/2 2/7
**do** [14]  19/23 25/8 30/4 31/16 32/6
 33/25 34/7 36/16 37/4 38/18 42/13 43/15
 47/20 51/9
**doctor** [1]  22/25
**document** [3]  34/25 35/1 35/10
**documentation** [1]  34/22
**documents** [9]  13/13 13/15 20/18 21/1
 35/20 41/3 47/25 48/1 50/11
**does** [11]  13/1 13/19 22/1 29/14 29/16
 29/18 31/3 40/21 44/12 45/5 45/21
**doesn't** [10]  7/20 19/24 20/20 24/3 24/4
 24/8 39/5 39/5 45/19 49/12
**doing** [4]  21/5 33/19 40/3 49/3
**don't** [49]  6/9 6/12 7/7 8/2 8/23 9/1 9/22
 11/3 15/10 15/22 16/9 19/13 19/16 19/22
 20/1 20/21 20/25 21/11 21/17 22/13
 23/17 23/18 24/25 27/20 28/17 30/17
 31/16 32/18 33/22 37/1 39/25 42/15
 42/21 43/1 43/12 44/19 45/15 46/4 46/13
 46/16 46/25 47/1 47/4 47/24 49/9 49/20
 50/11 50/14 51/22
**done** [5]  10/21 12/5 32/5 36/7 51/17
**double** [1]  17/4
**doubled** [2]  18/24 18/25
**doubling** [1]  37/24
**doubt** [1]  9/13
**DOUGLAS** [2]  2/3 5/8
**down** [4]  22/5 29/25 32/24 34/22
**Dr** [18]  5/20 5/22 6/4 11/5 17/19 21/16
 22/7 22/8 22/22 23/2 23/3 23/5 34/10
 36/17 39/19 40/10 40/23 49/6
**draft** [1]  6/11
**draw** [1]  23/23
**drawn** [1]  24/16
**drowning** [1]  20/16
**due** [1]  25/15
**during** [1]  35/20
**duties** [1]  20/21
**duty** [1]  14/6

# E

**e-mail** [1]  35/10
**e-mails** [2]  24/12 35/19
**each** [6]  11/13 11/17 19/11 33/17 39/10
 48/13
**earlier** [1]  25/4
**easier** [1]  23/4
**effective** [2]  34/14 34/19
**effort** [1]  16/17

**E**

Eight [2]  7/3 8/10
either [5]  8/23 11/18 14/18 26/16 52/1
elements [2]  19/25 52/5
elicit [3]  35/6 36/18 47/9
ELSA [1]  3/9
else [2]  29/1 35/3
emergency [1]  35/15
employees [1]  12/16
employer [1]  33/15
enable [1]  17/2
enabling [1]  21/20
encompassed [1]  10/12
end [1]  12/25
endlessly [2]  44/22 44/25
enforcement [1]  22/18
engagement [1]  52/7
enjoy [1]  51/24
enough [2]  31/7 46/17
Enrique [5]  15/20 29/3 41/14 46/4 46/11
entirety [1]  18/6
entitled [1]  54/7
equivalent [1]  9/11
especially [2]  20/7 21/22
essence [1]  41/16
essentially [3]  11/16 28/20 32/1
establish [1]  44/1
established [1]  42/16
even [6]  8/6 14/3 23/18 24/13 34/23
  39/13
event [3]  8/11 10/13 14/11
eventuality [1]  31/4
eventually [1]  30/8
ever [4]  23/11 34/24 48/21 50/13
every [9]  20/11 26/7 31/11 31/12 40/8
  41/23 48/8 50/4 50/18
everyone [3]  16/19 20/14 50/22
everything [1]  26/5
evidence [20]  17/1 17/17 17/19 19/4
  19/7 21/15 24/12 24/14 26/8 26/20 28/22
  30/5 35/10 40/8 40/14 40/21 41/23 42/3
  42/8 48/2
exactly [2]  21/17 50/4
examination [1]  52/19
example [4]  15/19 41/4 46/2 46/9
except [1]  26/19
exception [1]  26/4
exchanged [2]  9/25 33/6
exclusively [2]  30/24 30/25
executed [1]  40/24
exemplify [1]  37/15
existence [1]  18/18
existing [1]  33/5
exists [1]  21/4
exiting [2]  33/4 33/7
expecting [2]  20/18 29/17
explain [2]  19/19 41/13
explained [2]  6/23 23/13
explicit [1]  24/11
exquisite [1]  20/8
extend [1]  13/19
extradition [1]  29/21

**F**

F.2d [1]  17/9
F.3d [1]  8/17
face [1]  7/22
fact [7]  18/22 20/19 35/14 37/23 38/5
  41/1 48/18
factors [1]  17/6 17/13 17/24 19/2
facts [6]  9/13 18/7 42/3 43/24 48/14
  48/14

failed [1]  7/24
fair [1]  12/7 44/4
fairly [2]  18/22 24/16
falls [1]  48/14
familiar [2]  41/19 52/14
familiar with [1]  41/19
family [2]  28/4 29/16
far [1]  10/18
fashion [1]  14/12 49/11
fast [1]  48/19
faulty [1]  6/23
FCPA [7]  7/5 7/14 7/16 7/20 19/24 44/1
  44/18
February [1]  51/21
fellow [1]  27/14
Ferrari [1]  30/21
Ferraris [1]  40/16
few [1]  43/15
Fifth [1]  43/22
file [2]  13/7 42/24
filed [10]  8/4 9/2 10/1 10/2 10/8 13/1
  13/5 13/8 34/23 37/6
filing [2]  26/1 48/17
fill [1]  52/23
filled [1]  28/14
financial [1]  27/11
find [2]  24/23 24/23
finding [3]  20/22 21/13 47/25
findings [3]  9/7 9/20 25/4
finds [1]  38/10
fine [3]  5/25 22/12 40/3
finished [1]  42/10
first [15]  5/19 6/22 7/8 7/11 13/10 14/13
  18/12 23/12 27/4 32/3 43/15 45/9 47/11
  47/14 49/25
fit [1]  50/19
five [1]  49/5
flexibility [1]  48/23
flexible [1]  48/24
Floor [2]  2/4 3/5
Flower [1]  3/5
follow [1]  6/12
following [3]  17/13 17/24 39/1
Footnote [4]  10/7 10/8 45/3 45/4
forced [1]  17/22
foregoing [1]  54/5
foreign [3]  8/21 8/22 32/13
form [6]  9/19 17/14 20/13 25/3 52/6
  52/13
format [1]  54/8
forms [1]  20/9
forth [2]  7/9 22/17
forward [5]  37/3 43/6 46/17 48/25 49/1
framed [1]  17/12
frankly [3]  15/7 15/10 29/11
Fraud [2]  2/7
fraudulent [12]  38/21 38/25 39/16 39/19
  39/21 40/1 41/4 41/5 41/8 41/11 41/12
  41/13
Friday [1]  27/2
full [2]  9/18 51/12
fully [1]  44/12
fund [1]  27/12
fundamental [2]  17/6 25/15
fundamentals [1]  16/20
funneled [1]  15/7
further [4]  22/13 25/2 51/23 52/1
furtherance [3]  15/11 20/12 46/10
furtive [1]  35/6

**G**

G-I-E-S-E [1]  20/6
gave [3]  11/17 23/10 27/4

gearing [1]  42/12
general [1]  45/5
generally [1]  38/9
generating [1]  10/20
get [13]  6/14 9/20 17/20 29/3 29/22
  31/15 41/18 42/20 47/6 48/5 48/22 51/1
  51/3
getting [3]  28/3 38/14 44/2
Giese [1]  20/5
Girardi [2]  2/13
give [5]  9/16 26/21 27/21 32/22 52/3
given [3]  12/23 30/2 43/19
gives [2]  22/18 48/23
giving [3]  42/15 50/22 50/23
glasses [2]  52/10 52/21
Global [7]  27/7 27/8 27/9 27/24 30/1
  40/12 40/13
go [14]  9/22 22/13 23/3 23/5 24/4 28/7
  34/22 37/11 40/20 43/9 43/12 46/17
  47/24 49/22
goes [3]  18/2 19/20 44/20
going [35]  6/9 9/9 12/13 23/9 29/9
  29/25 30/1 31/5 32/8 32/15 37/2 38/17
  40/16 41/17 42/8 42/16 42/17 43/4 43/19
  44/4 47/6 47/11 47/14 47/19 49/11 49/18
  50/18 50/20 50/1 51/2 51/16 51/22 51/24
  51/25 52/8
GOMEZ [7]  1/10 5/5 5/14 7/1 8/25 12/19
  13/20
gone [3]  9/25 26/6 52/11
good [10]  5/8 5/12 5/13 5/17 5/18 6/2
  31/17 44/5 51/23 52/15
got [5]  19/21 22/24 34/22 35/21 45/25
gotten [2]  30/18 47/7
govern [1]  44/5
government [55]
government's [10]  10/22 13/10 17/18
  19/3 20/21 25/18 45/6 45/10 46/21 49/4
Grace [1]  51/11
grand [6]  10/4 10/14 11/19 12/14 37/20
  46/13
grant [1]  30/12
granted [1]  7/18
Greenberg [1]  2/18
greeted [1]  7/12
ground [2]  12/19 43/12
Grupo [7]  35/16 39/2 39/3 39/7 39/9
  40/13 41/14
Grupo's [1]  40/12
guidance [2]  26/8 26/22
guy [1]  33/23

**H**

had [23]  6/11 7/21 10/3 15/8 15/23 22/11
  23/13 27/24 29/10 32/1 33/11 33/12 34/3
  34/11 34/15 34/16 34/16 34/17 36/17
  36/18 40/25 47/10 49/7
half [1]  32/3
hand [4]  15/23 18/2 18/2 33/4
handful [1]  12/12
handled [1]  28/15
hands [1]  40/12
HANDZLIK [7]  2/18 4/5 4/8 5/19 22/15
  43/9 52/25
Handzlik's [1]  43/10
happen [2]  45/2 50/21
happened [10]  13/5 21/17 25/25 28/5
  28/6 29/7 32/4 40/11 43/2 46/25
happening [2]  15/23 42/11
happy [2]  28/24 28/25
harm [1]  49/2
has [24]  8/25 9/25 9/25 10/17 13/24 14/6
  19/15 20/19 22/15 24/10 25/22 28/8

**H**

has... **[12]**  31/25 33/25 37/18 39/10 40/9
40/22 42/16 43/15 48/18 48/24 50/4
52/10
have **[98]**
haven't **[9]**  6/11 15/24 16/5 16/5 21/13
36/22 43/21 47/5 47/6
having **[4]**  36/15 37/16 48/13 52/6
hayes **[2]**  2/19 5/19
haystack **[1]**  20/20
he **[17]**  6/5 15/20 15/23 22/22 23/7 27/10
27/17 27/22 33/14 33/14 33/24 33/25
34/12 34/14 34/18 35/16 40/25
he's **[2]**  33/23 48/17
heading **[1]**  31/18
hear **[3]**  30/14 31/17 51/23
heard **[8]**  9/10 9/15 25/9 27/5 31/23 43/8
49/22 49/24
hearing **[2]**  23/22 51/24
heightened **[1]**  21/14
held **[2]**  8/20 54/7
help **[2]**  47/22 49/12
helped **[1]**  16/2
helpful **[3]**  32/11 32/11 32/16
helps **[1]**  49/12
her **[25]**  6/25 12/23 13/24 16/23 20/17
23/13 23/14 27/24 28/1 28/2 28/3 28/5
28/6 28/6 28/6 28/7 28/15 29/16 29/16
29/17 29/18 29/19 30/23 38/9 52/18
here **[12]**  20/22 21/17 28/23 29/14 29/19
32/23 40/5 40/6 42/1 44/16 47/22 48/15
hereby **[1]**  54/4
Hernandez **[2]**  45/17 45/18
highlight **[2]**  37/13 38/19
highlighted **[1]**  36/13
hiked **[1]**  38/2
him **[6]**  5/23 22/6 33/10 33/11 33/12
37/21
hired **[1]**  37/21
hiring **[1]**  38/7
his **[13]**  6/18 21/19 22/5 22/17 27/14
33/13 33/15 34/4 34/14 38/9 38/16 39/15
48/18
hold **[3]**  9/15 14/24 31/9
Honor **[77]**
HONORABLE **[1]**  1/3
hope **[2]**  44/24 51/16
hopefully **[1]**  51/6
hoping **[2]**  29/11 29/24
hot **[1]**  20/25
housekeeping **[1]**  52/10
how **[17]**  11/14 17/2 20/11 22/2 24/1
24/4 26/22 28/17 32/4 32/12 33/16 34/21
36/16 39/18 39/19 39/20 48/19
HOWARD **[1]**  1/3
however **[1]**  10/22
hundreds **[3]**  20/17 20/17 45/16
hurricanes **[1]**  39/11
husband **[4]**  27/24 28/6 28/6 29/19

**I**

I'd **[3]**  22/4 43/16 45/9
I'll **[9]**  6/25 9/16 16/19 17/20 31/21 32/22
39/1 40/14 52/23
I'm **[43]**  6/8 6/15 7/16 9/9 13/4 13/9
13/16 20/5 25/7 28/20 30/7 32/7 32/17
32/22 32/23 35/3 36/20 37/23 37/24
38/22 41/9 41/18 42/8 42/12 42/13 42/13
42/16 42/17 43/6 43/10 43/13 43/22 45/1
46/7 47/17 49/18 49/19 50/11 51/16
51/17 51/24 52/9 53/1
I've **[6]**  9/11 25/6 31/22 36/1 40/23 48/21

idea **[1]**  23/25
identical **[2]**  36/9 36/20
identification **[1]**  45/23
identified **[14]**  14/12 14/15 14/17 16/13
19/11 26/9 27/3 40/23 41/11 41/12 46/20
46/21 47/22 48/5
identifies **[1]**  15/16
identify **[5]**  7/25 14/6 15/14 15/22 16/11
identifying **[3]**  15/25 45/22 50/23
identity **[2]**  15/5 15/6
illegal **[1]**  18/13
impacted **[1]**  48/19
implied **[1]**  18/7
important **[1]**  28/1
impossible **[1]**  16/7
include **[2]**  14/25 18/7
includes **[1]**  30/19
including **[4]**  10/3 17/3 19/25 26/20
incomplete **[1]**  43/1
incumbent **[1]**  47/23
indicate **[1]**  35/10
indictment **[42]**  6/23 7/4 7/8 7/9 7/13
7/17 7/24 8/24 10/11 13/11 14/13 14/16
15/4 15/14 15/21 16/1 16/6 16/7 17/23
18/1 18/5 18/11 18/19 30/4 31/2 32/7
32/19 33/6 36/12 36/20 36/23 37/1 37/6
37/19 37/20 38/20 39/14 45/9 46/3 46/8
49/14 49/25
indictments **[1]**  16/21
indirect **[1]**  19/13
indirectly **[1]**  40/9
individual **[5]**  15/5 15/19 46/4 46/5
47/23
individuals **[9]**  14/7 14/14 14/16 15/6
16/2 19/10 28/14 28/15 48/5
ineffective **[1]**  38/8
infer **[1]**  19/14
inference **[1]**  25/19
inferences **[3]**  23/24 24/10 24/16
inflated **[1]**  18/24
influence **[3]**  18/14 19/8 19/16
influenced **[2]**  32/14 32/14
informally **[1]**  34/23
informants **[1]**  48/6
information **[8]**  17/14 20/2 23/19 31/14
32/7 40/9 42/24 52/6
inherent **[1]**  48/14
initial **[2]**  7/12 8/16
initially **[1]**  10/1
innocent **[1]**  18/16
inordinate **[1]**  48/20
inside **[1]**  5/20
insight **[1]**  11/2
instead **[1]**  7/21
institution **[1]**  27/11
instruction **[2]**  44/13 44/19
instructions **[3]**  43/18 43/22 44/5
insufficient **[1]**  7/4
intend **[4]**  6/12 10/23 36/16 50/25
intended **[5]**  7/1 7/22 18/17 19/11 19/24
intends **[2]**  32/12 42/3
intent **[6]**  20/1 24/24 32/10 35/11 36/15
36/18
interest **[1]**  42/23
interested **[1]**  28/12
interesting **[1]**  43/7
interpreted **[1]**  18/7
interpreter **[2]**  3/9 5/16
intervening **[1]**  14/5
interviewed **[2]**  13/23 50/16
interviewing **[1]**  25/2
interviews **[4]**  12/6 12/11 12/24 13/4
introductory **[1]**  38/23

investigating **[3]**  42/20 49/4 49/6
investigation **[2]**  12/20 49/25
investment **[2]**  27/12 27/24
invidious **[3]**  20/1 35/1 35/11
invoice **[1]**  40/1
invoices **[13]**  24/17 33/5 38/21 38/25
39/7 39/17 39/20 41/4 41/6 41/7 41/10
41/10 41/21
involve **[1]**  44/12
involved **[6]**  16/9 26/17 26/17 28/12 30/6
34/1
involves **[2]**  44/14 44/18
involving **[1]**  28/19
irrelevant **[1]**  30/19
is **[142]**
isn't **[3]**  8/12 16/25 48/12
issue **[9]**  21/24 25/16 26/9 31/6 40/7
41/9 43/4 43/25 49/19
issued **[1]**  49/7
issues **[3]**  6/10 14/8 49/21
it **[115]**
it's **[41]**  6/15 7/23 8/9 8/10 8/15 12/10
12/11 14/10 16/22 21/3 21/4 21/7 21/8
22/17 23/3 28/4 28/21 28/22 30/1 30/19
31/6 31/13 38/20 39/14 39/24 43/5 43/19
44/4 44/10 44/12 45/15 45/15 46/14
46/15 46/16 46/22 46/23 47/23 49/3
49/15 51/22
item **[2]**  5/4 19/17
its **[11]**  17/18 18/6 20/23 21/6 34/11
39/10 44/9 45/10 46/11 46/18 48/14
itself **[4]**  14/16 18/11 28/13 31/2

**J**

JAN **[2]**  2/18 5/18
JANET **[2]**  3/4 6/2
JANUARY **[1]**  54/11
Jefferson **[1]**  44/17
jeopardy **[1]**  17/5
job **[2]**  38/11 40/3
jobs **[1]**  34/16
judge **[3]**  1/3 17/6 51/11
Judicial **[1]**  54/9
jump **[1]**  38/16
jury **[10]**  10/4 10/14 11/19 12/14 24/16
24/23 37/20 43/17 46/13 47/19
just **[29]**  7/16 9/1 9/17 12/20 13/16 13/17
16/17 16/24 20/23 25/10 27/20 32/23
34/13 39/14 40/6 40/14 41/6 42/15 42/18
43/16 44/10 45/9 46/16 46/23 49/22
49/24 50/7 51/9 53/1
Justice **[2]**  2/6 5/11

**K**

Kay **[5]**  7/15 7/24 43/16 43/18 44/21
keep **[2]**  18/8 21/5
Keese **[1]**  2/13
KEITH **[4]**  1/11 2/17 5/6 5/21
key **[4]**  10/3 10/4 10/6 47/25
kind **[1]**  28/4
knew **[10]**  17/19 17/20 26/20 28/18 30/5
33/10 34/14 34/18 34/18 38/15
know **[48]**  8/2 15/10 15/12 16/1 16/9
16/11 18/11 19/22 19/23 20/25 21/14
21/17 23/18 24/4 25/21 30/17 31/5 31/18
32/12 32/17 33/17 33/22 33/24 34/6
34/17 34/21 35/3 36/11 36/11 37/4 39/19
39/20 39/25 40/2 44/4 45/15 45/21 46/4
46/13 46/22 46/25 47/4 48/12 49/9 49/12
50/14 50/20 51/10
knowing **[1]**  36/15
knowledge **[27]**  17/17 21/15 21/24 22/3
22/20 24/2 24/9 24/15 26/10 26/16 31/6

**K**

knowledge... [16] 31/20 32/10 32/10
34/3 35/1 35/11 36/14 36/18 37/8 40/7
40/25 42/4 47/12 49/18 50/3 50/4
known [5] 15/13 15/13 45/13 46/12
47/10 47/13 48/4 49/8 50/1
knows [3] 20/14 30/3 46/20

**L**

language [3] 5/15 7/23 39/14
LARSON [11] 2/14 4/7 4/10 5/14 6/18
9/2 9/18 25/9 30/14 48/17 52/13
Larson's [2] 7/4 44/10
last [2] 11/4 27/5
later [4] 8/17 17/20 36/7 51/21
Laughter [1] 23/6
laundering [4] 7/6 8/18 26/12 26/13
law [14] 2/14 2/18 2/19 3/4 3/4 8/13 8/21
8/22 22/18 36/19 40/25 41/1 44/5 48/23
lawyer [8] 1/23 16/23 20/17 24/22 31/3
31/11 31/12 49/19
lawyers [7] 44/24 48/15 48/19 51/23
51/23 52/2 52/3
Lazarenko [4] 8/15 8/18 17/25 18/4
learn [2] 32/17 47/14
learned [3] 33/3 33/16 40/15
learning [1] 51/13
least [4] 14/4 25/23 49/21 52/3
leave [3] 33/14 33/15 53/1
lectern [4] 9/22 20/24 40/20 49/23
lee [17] 1/12 3/3 5/6 6/3 10/25 11/5
17/19 21/16 22/22 23/1 23/5 23/10 36/17
39/19 46/12 49/6 50/5
Lee's [1] 40/10
legitimate [2] 22/15 24/21
lengthy [1] 24/17
less [1] 12/11
let [7] 16/17 31/11 32/20 40/6 45/1 46/21
49/16
let's [3] 29/22 33/1 50/15
level [1] 24/25
LEVINE [9] 3/4 4/6 4/9 6/3 10/8 23/12
43/9 49/22 49/24
light [1] 20/22
like [15] 10/14 10/15 13/19 14/18 22/4
24/12 24/13 25/9 31/9 31/12 35/2 38/17
40/17 45/9 46/22
LINDSEY [54] 1/11 1/11 2/17 2/17 5/5
5/6 5/20 5/21 5/22 6/4 6/20 8/3 9/18 10/2
10/25 11/5 12/17 13/17 14/11 17/11
17/19 21/16 22/5 22/7 22/8 22/17 22/19
23/2 23/3 32/2 33/4 33/11 33/13 33/25
34/10 34/10 34/10 35/14 35/16 35/17
36/4 36/17 36/17 38/7 38/14 39/2 39/4
39/9 39/9 40/24 46/11 46/12 49/6 50/5
Lindsey's [1] 40/10
line [2] 28/20 46/3
Lines [1] 46/9
link [1] 40/14
list [5] 21/1 47/3 51/1 51/3 51/6
listed [1] 39/7
listing [1] 46/22
litany [1] 48/4
literally [1] 35/19
little [1] 48/20
lives [1] 29/18
LMC [2] 19/18 19/21
locate [1] 34/25
lodge [1] 6/14
Long [1] 17/9
look [5] 15/22 16/3 30/16 47/6 47/10
looking [5] 28/21 36/8 43/6 46/8 49/8

looks [1] 46/2
Los [1] 2/5
lost [1] 8/10
lot [5] 15/23 20/19 21/5 23/23 30/19
Lots [1] 17/8
low [1] 29/14
luckily [1] 48/22

**M**

made [9] 6/20 17/22 18/9 21/13 23/22
31/22 40/23 51/10 51/13
magistrate [4] 35/23 36/2 36/3 36/6
mail [1] 35/10
mails [2] 24/12 35/19
main [4] 14/17 16/12 49/21 49/21
majority [1] 12/23
make [8] 15/15 15/21 18/20 19/3 20/21
31/22 34/13 35/2
makes [3] 6/22 20/7 38/10
making [1] 48/10
managed [1] 27/12
mandatory [1] 48/7
manner [2] 13/19 24/17
MANUFACTURING [11] 1/11 2/17 5/5
5/20 12/17 33/13 34/11 36/17 39/2 39/4
46/11
many [7] 10/9 11/14 31/9 36/16 36/25
37/1 39/10
March [2] 30/3 51/17
MARIA [3] 1/10 5/5 5/14
Mario [1] 15/19
marshal [1] 52/18
martinique [2] 3/4 6/3
mass [2] 46/16 47/25
matter [6] 38/5 44/20 45/21 49/4 52/10
54/7
matthew [2] 2/19 5/19
MATZ [1] 1/3
may [20] 8/6 10/10 12/7 12/15 12/19
15/15 16/15 18/21 18/22 18/23 20/19
31/23 37/9 38/1 40/4 40/4 40/5 44/13
44/16 44/19
may make [1] 15/15
maybe [3] 8/10 19/21 24/16
MDC [1] 29/5
me [27] 5/9 9/14 12/14 13/9 13/17 16/17
24/8 25/5 26/21 26/21 27/1 27/3 27/5
27/21 28/17 31/11 31/13 31/18 32/20
40/3 40/6 42/18 43/5 43/21 47/1 49/16
51/22
mean [7] 13/8 33/9 33/24 36/25 37/2
39/25 50/11
meaningful [1] 20/24
meant [1] 30/22
meeting [2] 10/19 22/10
meetings [1] 23/23
memorialization [1] 6/13
memos [1] 24/12
mention [1] 49/24
mentioned [1] 21/19
merit [1] 8/25
met [2] 26/7 33/11
Mexican [3] 8/13 18/15 32/25
Mexico [5] 27/2 29/14 32/13 34/20 39/9
might [8] 6/23 22/20 24/16 35/18 36/25
47/12 47/21 49/1
MILLER [16] 2/3 4/4 4/5 4/6 4/8 4/9 5/9
9/22 14/24 16/16 20/23 21/1 25/19 40/6
41/22 49/17
Miller's [1] 26/3
million [4] 26/5 26/5 30/18 34/25
millions [1] 35/21
mind [5] 18/8 25/7 42/17 46/21 50/5

minute [2] 9/1 9/23
minutes [2] 44/6 44/6
mischaracterize [1] 37/2
mischaracterized [1] 25/7
misconduct [2] 42/13
missed [2] 8/6 37/23
mistaken [1] 37/25
Molloy [1] 51/11
moment [4] 12/7 14/3 41/6 44/6
money [10] 7/6 8/18 26/12 26/13 27/13
28/3 28/5 28/10 40/11 40/16
moneys [2] 19/8 30/22
Monica [1] 2/20
month [2] 51/6 51/17
months [1] 52/22
moot [1] 6/23
more [13] 7/2 12/5 17/14 21/10 21/14
31/14 32/11 34/13 36/2 37/21 42/4 42/16
48/25
Moreno [1] 15/5 32/16 45/8
Moring [1] 3/3
most [1] 48/24
mostly [2] 17/13 44/18
motion [32] 6/17 6/20 6/22 7/12 8/3 9/7
10/2 12/19 12/23 13/5 13/6 13/7 13/8
13/10 13/13 14/11 17/11 18/1 19/6 29/7
29/13 30/1 30/8 30/11 32/1 34/23 36/13
36/24 37/6 37/14 48/18 52/1
motions [3] 6/8 6/17 51/25
mount [1] 17/4
move [2] 9/9 9/17
MR [68]
MRAZEK [2] 2/7 5/10
MS [18] 4/6 4/9 7/1 8/11 8/25 10/7 12/19
13/11 13/20 13/23 23/12 26/11 27/2 36/6
43/9 49/22 49/24 52/10
much [2] 9/13 14/10
must [4] 15/11 25/20 25/25 26/16
my [25] 7/2 9/7 9/7 9/14 9/15 9/20 16/7
16/17 17/15 21/25 23/23 25/4 25/7 25/21
25/23 25/23 27/23 27/23 29/5 30/2 31/19
35/4 42/17 49/18 51/24

**N**

name [4] 19/11 27/4 27/5 27/15
named [4] 14/25 15/5 15/19 46/6
names [5] 14/19 16/12 46/19 47/7 50/1
narrow [1] 48/10
nature [1] 18/15
nearly [2] 36/5 36/6
necessarily [3] 18/7 24/10 24/11
necessary [5] 6/16 16/22 19/16 19/19
20/12
need [9] 6/24 6/24 20/1 23/18 28/22 30/3
31/22 37/4 51/9
needed [1] 8/4
needle [1] 20/20
needs [3] 6/13 7/17 39/11
net [1] 30/22
never [4] 13/23 15/12 25/21 30/24
new [5] 2/8 42/7 52/2 52/4 52/21
next [1] 19/17
NICOLA [2] 2/7 5/10
Ninth [3] 8/20 14/4 17/10
NIRENBERG [2] 1/23 54/14
no [24] 1/9 9/3 11/20 12/2 13/22 13/23
14/3 21/6 24/1 24/14 26/19 26/20 27/7
27/20 27/23 33/7 34/3 44/14 44/15 44/16
50/8 51/2 53/1 54/14
non [2] 11/24 44/18
Non-defendant [1] 11/24
non-FCPA [1] 44/18
none [2] 14/4 35/13

**N**

**North [2]** 1/24 2/4
**not [90]**
**notebook [1]** 43/11
**notes [3]** 7/2 10/23 10/24
**nothing [5]** 30/4 30/5 33/25 38/7 42/4
**notice [5]** 16/23 25/16 25/17 42/24
42/25
**notion [4]** 7/17 7/19 18/16 50/18
**novel [1]** 18/5
**November [3]** 35/8 36/4 52/11
**now [23]** 6/25 7/16 9/9 12/6 12/18 13/1
13/2 14/1 17/11 21/10 25/4 26/4 28/9
29/10 37/6 39/18 42/19 45/21 45/25 47/8
48/11 52/7 52/14
**number [4]** 5/4 12/21 32/3 38/20
**numbers [1]** 8/11
**NW [1]** 2/8

**O**

**O'Shea [6]** 33/21 33/22 34/1 34/4 46/23
47/1
**objection [1]** 23/16
**objectives [2]** 21/22 52/5
**objects [1]** 46/11
**obtain [2]** 18/14 20/10
**obtained [2]** 7/21 8/6
**obviously [1]** 37/18
**occasion [1]** 11/15
**occasions [1]** 11/14
**of the [1]** 32/3
**off [5]** 9/16 12/8 22/10 32/22 35/21
**offer [1]** 33/13
**offered [1]** 38/16
**office [3]** 2/2 38/9 38/9
**official [16]** 1/23 14/18 14/18 15/5 15/5
32/13 32/13 45/7 45/7 45/10 45/13 45/19
45/23 45/24 46/5 46/6
**officials [2]** 18/15 46/14
**often [1]** 25/8
**Okay [25]** 6/5 9/6 11/13 11/21 12/18
13/16 14/1 16/15 21/10 22/14 27/14
29/23 31/1 33/8 33/16 33/19 34/6 35/25
40/2 43/3 46/25 49/16 49/16 51/20 53/3
**once [1]** 40/11
**one [24]** 8/17 11/15 11/17 12/17 14/7
17/8 21/10 21/13 22/4 22/25 26/14 28/8
33/4 35/9 35/9 35/10 35/10 36/2 39/10
39/12 40/6 45/8 48/23 49/21
**ones [4]** 10/22 18/17 41/11 50/2
**only [8]** 7/3 12/9 26/11 43/18 44/8 44/14
44/17 44/19
**oOo [1]** 53/5
**open [1]** 46/23
**operations [2]** 19/12 19/14
**opinion [1]** 44/11
**opportunity [2]** 9/10 9/16
**opposition [11]** 10/1 12/18 12/22 13/10
14/20 14/22 19/9 21/12 26/2 42/2 44/10
**orally [1]** 6/9
**order [3]** 6/11 6/15 9/12
**ordering [1]** 51/17
**ordinary [5]** 17/23 18/10 18/17 18/22
19/5
**other [36]** 11/22 13/25 14/7 14/13 14/14
15/16 16/2 18/4 19/25 21/18 21/21 24/14
26/14 28/8 28/14 28/15 31/4 32/9 33/5
33/12 33/17 34/15 34/17 35/20 36/23
39/7 39/16 39/23 44/7 46/7 46/8 46/24
48/5 48/8 50/15 50/19
**other eventuality [1]** 31/4
**others [5]** 19/3 46/12 46/15 47/13 49/13

**otherwise [2]** 24/22 52/1
**our [8]** 6/2 6/13 9/4 10/5 19/11 22/6 36/7
37/14 37/22 39/18 49/13
**out [25]** 8/14 8/21 13/23 16/2 16/19
17/15 17/24 25/5 25/6 28/14 28/25 29/6
30/10 30/20 31/25 35/18 37/13 38/10
40/4 42/19 43/20 49/20 50/15 50/25
51/11
**outlier [1]** 43/19
**outline [1]** 43/19
**outside [1]** 34/4
**over [30]** 11/11 12/14 13/14 13/15 20/19
21/1 21/2 21/7 24/17 26/5 30/16 40/8
40/15 40/23 41/3 41/20 41/23 42/1 42/8
42/9 42/10 42/21 42/21 42/24 43/1 43/12
45/14 45/20 50/9 50/17
**overlooked [1]** 25/6
**overt [4]** 28/16 30/16 30/21 38/20
**owed [1]** 39/2
**own [3]** 21/6 23/24 39/11

**P**

**P.M [2]** 1/19 5/2
**page [14]** 4/3 8/19 12/18 12/21 12/22
20/7 38/19 45/12 45/18 45/24 46/3 46/9
47/14 54/8
**pages [6]** 20/17 26/5 30/18 34/25 45/15
45/16
**paid [6]** 24/18 32/5 37/21 37/22 39/15
41/2
**palpable [1]** 16/25
**pans [1]** 30/10
**paper [2]** 35/9 42/7
**papers [12]** 9/2 9/6 10/1 10/7 12/22
17/12 19/9 20/23 21/12 37/18 42/2 45/11
**Paragraph [1]** 47/13
**pardon [2]** 13/9 22/9
**parenthetically [1]** 8/2
**part [9]** 7/3 21/15 21/16 22/4 32/8 32/10
33/21 35/11 39/1
**participants [6]** 14/17 14/22 14/24 15/9
15/13 16/12
**particular [4]** 14/8 19/6 25/2 37/8
**particularly [3]** 17/12 20/22 36/14
**Particulars [28]** 6/19 6/20 6/24 8/3 9/9
9/19 10/3 14/2 16/22 17/8 17/15 20/3
20/8 20/13 21/23 22/2 22/2 24/3 25/3
25/15 28/21 30/8 32/1 32/2 36/14 36/24
37/7 37/14
**parties [2]** 41/16 46/9
**past [1]** 44/2
**pause [1]** 9/1
**pay [2]** 39/14 41/17
**payees [1]** 19/8
**paying [2]** 32/25 44/2
**payment [4]** 18/22 30/20 31/6 39/6
**payments [15]** 7/19 17/22 17/23 18/9
18/10 18/14 18/16 18/17 19/5 19/5 19/10
19/11 19/18 19/25 32/15
**peculiar [1]** 31/6
**pending [3]** 44/17 49/14 51/25
**people [19]** 10/5 12/1 12/10 14/12 15/16
15/24 15/25 16/8 16/14 21/19 33/11 39/9
45/5 45/9 46/2 46/19 46/24 47/21 51/5
**percent [5]** 18/25 19/1 24/18 38/2 39/6
**percipient [1]** 50/4
**performed [2]** 39/8 39/23
**perhaps [4]** 37/23 38/9 48/21 52/19
**period [1]** 24/17
**peripheral [1]** 31/13
**permission [1]** 5/23
**permit [2]** 42/10 51/16
**person [4]** 27/4 27/7 34/18 50/4

**personal [1]** 28/4
**persons [3]** 10/10 48/4 50/1
**phone [1]** 38/10
**piece [4]** 35/10 40/8 41/23 42/7
**Pineda [1]** 15/20
**place [4]** 10/8 15/11 15/20 31/3
**placed [1]** 40/11
**places [2]** 46/7 46/8
**PLAINTIFF [1]** 1/8 2/2
**plan [2]** 42/21 50/16
**planning [2]** 29/19 43/13
**play [1]** 10/13
**plead [2]** 8/21 17/3
**please [4]** 5/7 40/20 43/12 49/22
**plenty [1]** 31/16
**pockets [1]** 38/12
**point [22]** 12/11 17/20 17/24 24/15
24/22 25/6 27/18 28/25 31/1 31/7 31/22
35/1 35/9 35/18 37/13 39/13 39/18 42/19
42/22 43/17 48/10 51/11
**pointed [2]** 31/25 50/25
**pointing [1]** 31/5
**points [1]** 43/15
**pool [1]** 13/21
**portions [1]** 49/25
**position [9]** 9/22 19/8 19/16 25/13 29/20
30/2 31/12 31/17 51/6
**positions [1]** 17/1
**possession [1]** 10/23
**possibly [1]** 24/15
**potentially [1]** 15/17
**power [1]** 19/15
**practice [1]** 35/18
**pre [4]** 33/4 33/5 33/7 36/20
**pre-existing [1]** 33/5
**pre-exiting [2]** 33/4 33/7
**pre-indictment [1]** 36/20
**precise [2]** 8/12 43/22
**precisely [1]** 8/22 35/6
**precision [1]** 31/2
**preclude [1]** 24/8
**predicate [1]** 26/12
**predicates [1]** 7/6
**pregnant [1]** 28/9
**preparation [2]** 16/24 21/6
**prepare [5]** 21/20 24/13 28/23 31/3 52/4
**prepared [2]** 11/7 36/9
**preparing [1]** 12/6 37/16
**prescription [2]** 52/18 52/20
**present [4]** 3/9 5/14 5/22 33/15
**preside [1]** 43/1
**presumptuous [1]** 49/20
**pretty [2]** 6/10 31/13
**prevailing [1]** 16/20
**previewing [1]** 40/3
**previous [2]** 23/22 24/20
**principal [2]** 7/11 7/14
**principle [1]** 49/19
**principles [3]** 9/14 14/2 18/8
**prior [4]** 26/18 37/22 38/7 38/13
**prison [2]** 30/3 52/11
**private [1]** 40/1
**probably [4]** 7/2 10/11 21/14 30/19
**problem [3]** 29/13 36/12 36/13
**proceedings [3]** 1/16 53/4 54/7
**process [2]** 25/16 42/14
**produce [1]** 42/5
**produced [4]** 9/25 10/16 11/21 19/7
**production [4]** 10/14 13/18 20/13 42/25
**productive [1]** 51/22
**products [2]** 19/18 19/19
**progress [1]** 26/4

**P**

prohibit [1]  52/1
prohibited [1]  8/23
prompt [1]  9/14
pronounced [1]  20/5
proof [3]  35/1 37/5 38/5
proper [1]  30/7
proposed [1]  6/15
proposition [2]  14/5 18/5
prosecution [3]  9/21 19/22 36/23
prosecutor [2]  24/22 36/21
prove [10]  19/4 19/21 19/23 22/1 22/3
22/20 24/2 24/19 32/12 36/17
proved [1]  18/18
proven [4]  18/23 19/25 24/9 24/10
proverbial [2]  20/20 20/25
provide [3]  16/23 51/6 52/18
provided [10]  10/3 10/21 11/1 12/25
13/4 15/16 16/4 19/25 22/22 52/6
providing [1]  13/25
provinces [1]  39/10
proving [1]  24/5
provision [1]  8/14
provisions [1]  8/13
purchases [1]  40/16
purport [2]  41/13 41/15
purpose [1]  39/25
purposely [1]  35/3
purposes [2]  18/1 36/4
pursuant [1]  54/4
put [5]  16/1 31/11 33/1 36/21 36/22

**Q**

qualified [1]  15/17
question [13]  10/8 18/12 21/10 27/7
27/23 31/15 32/20 36/21 37/7 39/18 40/2
41/22 49/16
questioned [7]  11/5 11/8 11/13 11/15
11/16 12/2 12/5
questions [2]  9/21 37/10
quick [1]  52/9
Quite [1]  29/11
quoting [1]  18/4

**R**

rare [1]  21/22
rather [3]  17/23 18/9 25/8
reached [1]  23/11
read [9]  9/6 18/5 36/15 37/18 37/19
38/22
readily [1]  18/20
real [4]  34/22 40/2 43/6 43/25
really [8]  18/2 20/9 24/8 32/24 34/21
41/16 41/17 47/17
reason [3]  13/22 33/14 41/15
reasonably [1]  16/13
recall [1]  8/2
receipt [1]  19/17
receive [1]  26/2
received [2]  27/1 39/7
receiving [1]  13/24
recently [3]  12/5 12/23 50/2
recognize [2]  6/25 30/2
recognized [1]  14/3
reconsider [1]  46/18
record [2]  12/8 22/10
recorded [1]  42/7
recuring [1]  14/8
refer [2]  6/25 13/13
reference [4]  10/10 14/23 15/15 15/21
referenced [2]  15/4 16/5
referencing [1]  13/4
referred [9]  10/10 13/6 15/21 17/22 20/6

22/10 26/21 27/1 28/9
referring [2]  7/15 28/7
refers [1]  14/13
reflections [1]  35/5
reflects [2]  19/9 40/9
refrain [1]  43/17
regard [1]  37/8
regular [1]  27/22
regulations [1]  54/9
relationship [3]  33/4 33/7 33/9
relatively [1]  25/13
relief [4]  6/19 9/17 9/18 24/3
rely [3]  42/4 42/17 50/25
remain [2]  5/23 6/5
remember [2]  42/17 51/13
rendered [3]  39/3 41/14 41/17
repeatedly [2]  35/9 35/12
reply [5]  9/2 10/7 17/12 17/16 26/1
reported [1]  54/6
Reporter [1]  1/23
REPORTER'S [1]  1/16
representation [1]  26/3
representative [1]  35/17
representatives [1]  34/11
represented [1]  29/2
representing [2]  31/12 31/19
request [1]  25/14
requested [1]  32/4
requesting [1]  29/20
require [4]  7/20 22/1 29/16 42/16
required [6]  8/23 17/7 19/20 20/4 42/21
44/2
requirement [2]  8/12 25/2
requirements [2]  7/10 36/8
requires [1]  48/22
requiring [1]  51/12
resolve [1]  59/24
respect [3]  22/19 23/14 25/23
respond [2]  22/4 40/6
responded [1]  37/9
responding [2]  25/14 26/1
response [1]  37/1
rest [1]  46/2
resume [1]  16/17
return [2]  7/18 29/14
reveal [1]  28/2
revealed [1]  15/7
revealing [1]  25/19
review [1]  25/21
reviewed [1]  26/7
right [16]  6/8 13/2 13/12 16/15 20/10
24/6 26/4 27/6 27/17 27/25 30/15 31/15
34/2 43/8 44/7 52/23
rises [1]  48/13
risk [2]  16/25 17/4
road [1]  29/25
rooms [1]  11/17
row [1]  5/19
rule [10]  6/9 6/22 14/2 16/20 18/2 20/14
21/25 25/16 30/8 30/11
rules [1]  48/24
ruling [1]  9/7 44/11 46/19
rulings [3]  6/14 14/8 51/25
ruse [1]  39/25

**S**

safety [1]  30/22
said [11]  9/11 10/3 17/25 18/5 20/11
20/22 22/22 24/7 25/4 30/24 31/8 36/25
36/25 37/4 38/17
sale [1]  35/15
sales [7]  34/19 34/20 35/17 37/22 38/6
38/8 38/13

same [11]  11/16 11/16 12/19 13/19
17/15 23/2 28/20 33/19 44/21
45/23
Santa [1]  2/20
sat [1]  22/5
say [19]  7/2 10/21 17/8 20/16 23/21
23/25 24/8 25/19 39/5 39/5 41/10 44/5
45/19 46/7 46/23 49/11 50/7 50/14 50/15
saying [11]  24/8 25/24 30/12 30/14
39/22 39/24 41/11 42/12 43/13 46/15
49/13
says [10]  10/9 12/23 18/12 36/11 36/12
38/25 45/7 45/13 46/3 46/9
SBB [1]  34/13
scholars [2]  43/19 44/21
scrap [1]  35/9
search [5]  35/20 36/4 36/7 40/24 49/7
seated [1]  5/19 16/15
second [2]  8/15 11/3
secondly [1]  18/19
secretly [1]  42/7
Section [2]  2/7 54/4
see [7]  15/23 16/4 20/21 30/20 38/17
42/5 43/24
seek [1]  32/9
seeks [1]  20/9
seem [1]  8/7
seemingly [2]  44/22 44/25
seems [3]  9/24 14/7 39/24
seen [9]  33/12 34/11 35/22 36/1 36/1
36/2 36/9 37/20 47/5
seized [1]  35/20
senior [1]  5/10
sense [4]  6/2 29/11 18/6 33/9
sentence [1]  11/4
separate [1]  11/17
servers [1]  35/21
services [8]  33/14 38/16 39/3 39/8 39/16
39/23 41/14 41/17
sets [1]  22/17
setting [1]  7/9
Seven [2]  7/3 8/9 8/10 8/10 30/17
several [2]  12/10 51/5
shape [1]  40/4
she [16]  5/14 7/2 13/24 26/20 28/8 28/12
28/13 28/18 29/13 29/14 29/15 29/16
29/18 30/3 30/3 30/5
she's [3]  16/24 29/21 30/2
short [2]  29/25 34/8
should [5]  9/1 18/5 20/3 45/13 45/24
show [5]  26/16 38/6 40/15 42/4 50/19
sides [1]  20/6
sign [1]  52/14
signed [1]  28/13
simple [1]  18/20
simplistic [1]  35/4
simply [7]  21/5 21/8 23/19 23/21 25/24
29/13 32/4
since [7]  9/25 33/3 35/8 36/21 36/23
49/4 49/7
sit [2]  30/3 48/15
sits [1]  29/5 38/9
sitting [2]  6/4 32/23
situation [1]  34/16
Six [2]  8/9 8/9
skip [1]  39/1
slightly [1]  8/19
so [51]  7/24 8/23 9/6 9/10 9/21 10/18
10/20 11/21 12/10 13/3 13/5 13/23 14/10
15/24 15/24 16/25 18/15 19/16 20/1
20/24 24/25 25/1 25/1 25/4 25/9 28/12
29/20 31/19 32/25 33/8 33/16 34/6 34/18
34/25 38/15 39/16 42/25 44/15 44/19

**S**

**so... [12]** 46/2 46/18 47/7 47/22 47/24 47/24 49/19 49/25 50/18 51/12 51/14 52/7
**so-called [1]** 39/16
**some [28]** 6/23 8/16 9/21 9/24 10/1 12/1 13/21 14/1 14/5 16/2 18/4 20/8 20/15 21/19 26/8 26/16 26/18 28/19 31/4 32/14 33/14 39/11 42/6 42/7 42/7 42/20 44/13 51/9
**somebody [4]** 35/3 46/6 47/12 47/22
**somehow [6]** 28/18 32/15 33/8 46/24 47/8 50/16
**someone [7]** 15/21 17/2 19/14 34/1 34/18 50/15 50/18
**something [11]** 8/6 18/21 21/8 24/7 24/9 25/1 25/24 28/5 28/6 28/23 35/5
**Sometime [1]** 39/12
**sometimes [2]** 24/10 25/8
**somewhat [1]** 44/22
**somewhere [1]** 46/16
**sons [1]** 29/18
**sorry [1]** 52/9
**sort [1]** 39/24
**sought [7]** 6/19 7/22 9/18 9/19 32/9 33/19 36/18
**sound [2]** 7/7 8/1
**South [1]** 3/5
**SPANISH [2]** 3/9 5/15
**speaking [1]** 43/9
**specific [2]** 8/21 18/9
**specifically [2]** 18/19 21/11
**specifications [1]** 32/3
**specificity [1]** 31/2
**specify [3]** 10/4 35/6 42/25
**spell [1]** 8/21
**spelled [1]** 8/14
**spotlight [1]** 37/15
**Spring [1]** 1/24 2/4
**stamped [1]** 45/12
**stand [1]** 13/2
**standard [2]** 18/25 18/25
**standards [2]** 20/2 21/20
**standing [1]** 53/1
**start [1]** 16/19
**starts [1]** 38/20
**state [3]** 5/7 10/13 39/17
**statement [7]** 22/18 22/23 23/10 23/11 38/23 40/23 50/18
**statements [9]** 10/11 11/7 11/10 11/21 11/22 13/18 13/20 35/4 50/23
**states [9]** 1/1 1/7 2/2 5/9 7/15 39/10 50/5 54/5 54/9
**stating [1]** 39/1
**statute [2]** 7/23 7/23
**stay [2]** 29/14 29/16
**stealing [1]** 43/10
**stenographically [1]** 54/6
**STEPHEN [2]** 2/14 5/13
**steve [4]** 1/12 3/3 5/6 6/3
**still [7]** 10/9 10/19 10/20 40/19 42/20 51/4 51/9
**stockpile [1]** 39/12
**stop [3]** 11/3 23/21 23/23
**stopped [1]** 12/14
**straightforward [1]** 6/10
**Street [3]** 1/24 2/4 3/5
**stronger [1]** 52/3
**subject [1]** 39/11
**subjects [1]** 36/14
**submit [4]** 28/24 31/21 32/6 38/11
**submitted [6]** 24/18 35/23 36/2 36/3 36/5 47/1

**submitting [1]** 40/1
**subsection [1]** 8/12
**substantive [3]** 7/10 44/14 44/15
**success [1]** 19/24
**such [1]** 32/12
**suffice [2]** 20/20 23/25
**sufficient [6]** 31/2 31/4 31/9 32/7 32/18 42/2
**suggest [2]** 42/22 49/15
**suggestion [1]** 24/4
**suggests [1]** 30/5
**Suite [2]** 2/9 2/20
**summary [1]** 34/8
**superceded [1]** 8/17
**Superceding [1]** 13/11
**Superseding [3]** 7/9 14/13 49/25
**supposed [1]** 26/22
**supposedly [2]** 18/24 21/18
**sure [10]** 6/15 20/5 25/11 32/17 35/2 36/20 37/23 37/24 38/22 45/1
**surprise [5]** 17/2 37/16 47/24 51/2 51/8
**surprised [1]** 50/17
**synthesize [1]** 16/17

**T**

**table [1]** 5/10
**take [9]** 11/4 20/18 21/19 21/23 21/25 31/19 33/2 47/7 52/24
**taken [2]** 15/11 25/20
**takes [1]** 19/13
**talisman [1]** 25/22
**talk [4]** 25/5 44/21 45/4 45/5
**talking [4]** 33/1 45/17 50/11 50/22
**tangible [1]** 24/12
**taxes [1]** 44/2
**teaching [1]** 7/15
**team [1]** 36/23
**tell [3]** 28/17 37/2 37/3
**telling [2]** 31/17 50/24
**Ten [1]** 30/21
**tentative [2]** 6/10 9/12
**termed [1]** 10/5
**terms [12]** 7/8 10/13 19/24 20/20 26/8 26/22 30/18 31/18 34/21 46/1 46/20 48/13
**testify [1]** 11/1
**testimony [5]** 10/4 10/14 12/15 47/9 47/19
**than [11]** 12/11 17/23 18/9 24/15 32/11 36/2 36/24 37/21 44/3 48/25 51/21
**Thank [4]** 6/1 6/7 16/16 53/3
**that [340]**
**that's [45]** 5/25 7/22 8/24 10/5 10/21 10/25 11/6 11/9 17/9 19/16 19/19 22/12 23/2 23/7 25/16 26/9 27/11 28/8 28/16 28/20 29/23 30/6 30/9 30/11 31/19 33/20 34/8 36/13 37/24 39/16 44/7 46/1 46/5 46/5 46/6 46/6 46/17 47/22 48/6 49/14 49/19 50/15 50/20 51/15 51/19
**the following [1]** 39/1
**their [9]** 11/21 14/18 15/1 21/21 28/10 28/10 46/21 46/9 50/22
**them [25]** 6/9 11/13 11/18 13/19 14/17 16/5 16/5 16/10 16/13 19/12 26/8 26/15 28/14 35/6 35/12 38/16 39/21 41/6 41/8 44/24 46/21 50/22 50/23 51/1 52/3
**themes [1]** 17/1
**themselves [2]** 26/14 46/24
**then [14]** 6/19 12/13 14/22 19/6 22/13 26/15 31/21 38/12 42/4 44/21 45/7 47/11 48/7 51/12
**theory [2]** 19/3 23/13
**there [57]**

**there's [10]** 7/15 13/23 20/24 23/23 24/1 25/3 40/22 42/3 50/5
**therefore [1]** 12/2
**these [18]** 10/1 18/14 19/8 22/24 26/24 28/9 28/13 28/16 28/17 28/18 28/24 31/9 32/15 35/19 39/23 41/1 41/4 41/10
**they [56]**
**they know [1]** 39/20
**they're [3]** 39/24 41/12 49/13
**thing [2]** 13/24 29/24
**things [13]** 15/11 25/6 25/20 31/17 32/5 32/12 34/13 34/21 36/15 36/16 37/14 38/19 51/9
**think [43]** 6/10 6/17 7/7 7/8 7/25 8/7 8/9 8/23 9/2 10/9 11/4 12/7 15/16 19/13 19/16 20/1 20/24 21/11 21/14 22/18 23/18 23/22 24/25 25/13 27/5 31/13 31/16 31/16 31/22 32/18 37/14 41/3 42/15 43/6 43/19 44/20 46/17 47/1 47/23 49/19 51/5 51/22 52/8
**thinking [2]** 32/23 42/14
**this [72]**
**thoroughly [1]** 37/18
**those [32]** 9/7 10/5 10/20 10/24 10/25 11/10 12/6 12/16 13/3 13/15 15/6 15/12 16/11 16/12 17/6 18/8 19/2 19/17 25/4 26/22 27/3 36/15 36/23 41/16 44/21 46/13 46/19 46/19 46/24 48/13 50/24 50/24
**though [1]** 14/3
**thought [8]** 16/13 23/2 24/6 25/19 34/15 38/2 43/8 43/21
**thoughts [1]** 16/18
**thousands [3]** 20/17 20/18 45/16
**three [10]** 12/9 12/15 12/16 26/4 26/12 26/15 49/21 49/24 52/5 52/22
**threshold [1]** 25/14
**through [12]** 24/10 24/11 26/6 27/12 28/21 28/22 28/22 32/24 34/23 46/10 48/22 49/8
**time [13]** 6/11 7/11 11/16 22/11 24/18 27/5 32/17 36/6 39/12 40/24 44/20 47/11 47/14
**times [2]** 19/12 37/1
**timing [1]** 48/16
**timing-wise [1]** 48/16
**title [2]** 14/18 54/5
**today [3]** 40/3 42/1 52/24
**together [3]** 27/23 46/12 48/4
**told [5]** 13/17 35/2 42/18 45/7 52/21
**tons [2]** 35/19 35/19
**too [2]** 22/22 36/21
**total [2]** 12/9 17/2
**totally [2]** 18/10 30/19
**touch [1]** 21/18
**towers [2]** 35/15 39/11
**track [2]** 8/10 21/5
**transactions [2]** 26/17 28/18
**transcript [4]** 1/16 6/14 54/6 54/8
**transferred [2]** 40/12 40/12
**transportation [1]** 26/17
**Traurig [1]** 2/18
**triable [2]** 40/4 40/5
**trial [27]** 5/10 12/16 16/25 19/21 21/6 21/21 24/13 31/4 32/17 37/17 40/3 42/6 42/6 43/1 43/6 43/7 44/20 47/25 49/22 50/14 50/16 51/1 51/7 51/12 51/17 51/18 52/5
**tried [3]** 15/14 16/11 19/19
**trillion [1]** 46/16
**true [3]** 23/8 46/1 54/5
**trust [1]** 28/10
**try [2]** 19/4 22/20

## T

**trying [6]**  13/16 25/5 32/22 37/16 51/8 52/12
**TUESDAY [2]**  1/18 5/1
**turn [5]**  42/21 42/21 44/24 50/17 52/7
**turned [16]**  11/10 12/14 13/15 20/19 21/1 21/2 21/7 40/8 40/14 40/23 41/3 41/20 41/23 42/1 45/13 50/9
**turning [1]**  13/14
**turns [1]**  49/20
**two [15]**  22/24 26/11 26/11 26/13 26/21 26/25 27/3 28/9 32/1 37/13 38/19 49/7 49/21 49/24 52/21
**two aspects [1]**  32/1
**type [1]**  24/3
**typical [1]**  49/11

## U

**U.S [4]**  1/3 1/23 2/3 2/8
**ultimately [1]**  14/21
**uncertainty [1]**  9/24
**under [5]**  7/15 39/13 40/25 50/19 52/1
**underlying [1]**  7/5
**understand [7]**  11/4 13/17 25/12 25/13 25/18 29/19 30/13
**understanding [1]**  43/1
**understands [1]**  16/19
**undisclosed [1]**  12/11
**undoubtedly [1]**  19/2
**unexpectedly [1]**  50/19
**unfortunate [1]**  51/15
**unfounded [1]**  50/20
**unhelpful [1]**  30/20
**unidentified [1]**  10/9
**unindicted [2]**  15/1 15/3
**UNITED [7]**  1/1 1/7 2/2 5/9 7/14 54/5 54/9
**universe [1]**  42/3
**unknown [4]**  46/12 47/13 48/5 50/2
**unlawful [1]**  30/6
**unless [1]**  50/2
**unnamed [3]**  45/8 46/19 46/19
**unnecessary [2]**  8/20 18/10
**until [1]**  30/3
**unusual [3]**  6/11 14/5 35/18
**up [9]**  6/12 12/13 29/16 29/19 38/2 39/24 42/12 44/12 50/19
**upon [1]**  18/18
**uprisings [1]**  39/12
**ups [1]**  35/5
**us [13]**  2/6 32/11 32/16 34/5 37/3 45/7 46/21 47/22 49/12 49/12 49/14 50/24 52/21
**USA [1]**  5/4
**use [1]**  18/14
**used [4]**  16/12 16/13 38/7 45/16
**using [1]**  33/10
**usual [2]**  35/3 48/4

## V

**Valco [1]**  36/8
**valid [1]**  7/19
**VASQUEZ [1]**  3/9
**vehicle [1]**  20/14
**verge [1]**  13/14
**versus [2]**  5/5 7/15
**very [22]**  9/13 18/15 18/18 18/19 23/12 28/1 28/3 28/12 31/17 32/16 34/8 37/19 38/4 40/4 40/5 41/18 43/5 43/24 44/3 52/9 52/9 52/15
**view [2]**  39/18 49/18
**violate [1]**  36/19
**violation [3]**  8/21 19/23 44/1

## W

**W.R [1]**  51/11
**waits [1]**  38/10
**waive [1]**  29/21
**want [18]**  9/17 17/14 17/17 17/18 17/21 17/21 25/5 29/14 29/17 29/18 37/3 38/19 42/22 43/8 49/20 51/20 52/16 52/17
**wanted [4]**  33/14 33/15 37/13 45/4
**wants [2]**  29/13 31/14
**warden [1]**  52/18
**warning [1]**  42/15
**warrant [4]**  24/3 36/7 48/7 49/7
**warranted [3]**  16/22 17/8 25/3
**was [74]**
**Washington [1]**  2/9
**wasn't [1]**  38/14
**way [15]**  14/10 16/3 17/3 17/4 17/12 22/1 22/2 22/20 28/19 30/10 30/12 32/14 38/8 47/15 50/10
**ways [1]**  42/20
**we [109]**
**we'd [3]**  24/4 38/17 46/14
**we'll [4]**  32/17 42/5 51/5 52/24
**we're [17]**  12/5 13/24 28/3 29/12 29/20 30/9 37/2 37/15 41/11 42/21 49/14 50/23 50/23 51/8 52/8 52/12 53/3
**we've [20]**  5/23 12/14 15/8 15/14 16/11 16/12 29/10 36/25 37/4 37/6 41/3 41/11 41/12 41/20 41/20 49/8 49/10 50/9 50/16 50/17
**wedded [1]**  45/22
**week [1]**  12/25
**welcome [3]**  6/5 6/4 25/5
**well [25]**  5/20 6/6 10/23 13/20 18/3 22/13 23/20 23/22 24/6 29/9 33/24 34/8 34/10 36/22 37/2 38/4 38/17 40/25 47/17 47/21 48/9 50/13 51/4 51/10 51/20
**went [3]**  27/13 34/17 50/5
**were [51]**  6/23 7/18 7/25 8/5 10/1 11/5 11/7 11/8 11/15 11/16 12/20 13/14 14/16 16/3 16/9 16/12 18/16 18/17 18/24 18/24 19/5 19/8 19/10 19/11 21/18 24/18 26/17 26/24 27/1 27/3 27/3 28/11 28/14 28/15 28/18 29/8 30/22 32/4 32/5 32/5 32/15 33/3 39/2 39/8 39/19 41/2 41/11 41/16 41/17 43/13 45/7
**were answering [1]**  12/20
**weren't [3]**  38/14 39/23 51/13
**WESTERN [1]**  1/2
**what [85]**
**what's [11]**  8/7 10/13 12/21 13/5 21/19 21/23 26/15 27/14 39/25 49/2 49/10
**whatever [3]**  33/2 41/25 42/1
**when [14]**  7/12 12/13 17/19 20/11 20/19 30/20 34/11 37/21 38/15 41/8 42/23 44/2 48/17 51/3
**where [14]**  13/1 17/13 20/11 21/13 21/13 30/7 30/9 31/18 34/16 35/6 45/4 46/7 48/3 49/3
**whereas [1]**  10/11
**whether [22]**  9/13 17/3 17/7 19/7 19/17 19/21 20/3 21/18 21/20 24/7 28/21 28/22 30/7 31/15 33/3 37/12 42/5 44/1 45/24 46/22 46/23 49/10
**which [12]**  8/16 9/21 18/7 22/25 24/9 24/17 25/16 26/21 27/12 36/7 41/11 44/17
**While [1]**  32/11
**who [27]**  5/19 6/3 10/5 12/1 14/12 14/13 15/20 19/14 21/17 27/2 29/17 33/13 33/22 33/24 34/19 45/5 45/7 45/21 45/23 46/4 46/13 46/15 46/20 46/24 47/12 47/19 50/4
**whom [1]**  19/10
**whose [3]**  14/19 19/10 27/4
**why [9]**  9/22 18/21 28/2 28/16 39/25 41/12 45/21 45/24 48/7
**will [24]**  6/16 9/10 9/21 13/14 14/1 14/22 15/12 17/9 23/3 23/5 23/7 25/21 29/16 34/25 38/6 43/5 43/6 43/18 44/20 46/7 47/9 48/19 51/13 51/20
**willful [2]**  41/1 44/13
**willfully [1]**  36/18
**willing [2]**  29/21 30/2
**Wilshire [1]**  2/14
**wise [1]**  48/16
**wish [1]**  9/15
**withdrawn [1]**  34/16
**withholding [2]**  21/4 21/8
**within [3]**  44/15 45/20 47/12
**without [2]**  7/1 44/2
**witness [8]**  10/11 12/10 13/18 26/24 47/9 47/9 47/11 50/18
**witnesses [18]**  10/4 10/6 10/18 10/19 10/20 10/23 11/22 11/24 12/4 12/15 12/16 47/7 47/18 50/13 50/24 50/25 51/6 51/20
**women [1]**  28/10
**won't [5]**  42/10 43/14 44/24 48/5 50/20
**words [3]**  36/23 46/16 48/13
**work [2]**  27/10 34/15
**working [2]**  38/14 42/10
**works [2]**  26/4 38/11
**world [1]**  34/22
**would [35]**  7/1 9/13 9/14 10/11 15/17 16/7 17/14 19/4 22/3 24/2 24/6 24/7 24/21 25/5 25/9 28/24 28/25 29/11 30/11 30/12 32/11 32/16 35/10 40/15 41/1 42/19 42/23 44/20 45/1 46/18 47/9 48/7 49/2 49/15 50/13
**wouldn't [1]**  19/22
**written [3]**  6/9 6/13 9/12
**wrong [1]**  30/4
**www.cindynirenberg.com [1]**  1/25

## Y

**year [1]**  51/12
**years [2]**  49/5 49/7
**yes [21]**  11/12 11/23 11/25 22/8 23/7 23/17 25/10 27/19 27/20 29/4 31/24 32/21 33/18 34/20 35/24 36/8 38/24 41/20 41/24 50/7 50/9
**yet [3]**  12/2 21/8 44/10
**York [1]**  2/8
**you [103]**
**you're [14]**  6/14 30/14 31/12 31/17 31/18 38/17 42/12 42/14 44/2 47/8 47/14 47/16 48/10 51/23
**you've [11]**  20/25 23/21 30/18 33/2 33/16 34/22 35/22 36/21 37/19 42/1 42/1
**your [98]**