ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
DOUGLAS M. MILLER (SBN: 240398)
Assistant United States Attorneys
NICOLA J. MRAZEK
Senior Trial Attorney
1300 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2216
Facsimile: (213) 894-6436
Email: douglas.m.miller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-1031(A)-AHM |
| Plaintiff, | |
| v. | GOVERMENT'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY PURSUANT TO *BRADY V. MARYLAND* |
| ENRIQUE FAUSTINO AGUILAR NORIEGA, ANGELA MARIA GOMEZ AGUILAR, KEITH E. LINDSEY, STEVE K. LEE, and LINDSEY MANUFACTURING COMPANY, | |
| Defendants. | |

GOVERMENT'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY PURSUANT TO *BRADY V. MARYLAND*

The United States, by and through its attorneys of record, the United States Department of Justice, Criminal Division, Fraud Section, and the United States Attorney for the Central District of California (collectively, "the government"), hereby opposes the defendants' Motion to Compel Discovery Pursuant to Brady v. Maryland.

A.   <u>Factual Background</u>

On December 10, 2010, the government disclosed to counsel for each defendant the Memorandum of Interview ("MOI") of Kellie Hua, a Revenue Agent with the Internal Revenue Service ("IRS"). In that interview, Revenue Agent Hua stated that had she suspected that the payments to a Mexican company were bribes, she would have reported them to her supervisor and requested a criminal referral.

As counsel for the defendants are aware, the government has no objection to allowing the defense access to IRS audit files for the Lindsey corporate entities.  When the United States received counsels' request on January 10, 2011, it began investigating what audit files existed and, given that the defendants requested taxpayer return information covered by the prohibitions on disclosure contained in 26 U.S.C. § 6103, sought advice on how to proceed.  On January 12, 2011, the government informed counsel that it had requested the audits and would likely proceed by seeking an order from the Court authorizing disclosure.  It also informed counsel that Revenue Agent Hua would not be a witness at trial, resolving what appeared to have been a previous miscommunication on that issue.  On January 14, 2011, the government had drafted but not yet received United States Attorney approval for an <u>ex parte</u> application permitting disclosure of the requested tax information.

Despite informing defense counsel that their motion would be largely premature, especially given the government's lack of

-2-

objection to disclosing the audit file, defendants' filed the instant motion. In addition to the 2004, 2005, and 2006 audit files, the defense motion requests a broad array of additional materials, including agent and prosecutor communications, drafts of agent affidavits, rough notes of agents interviews, and the Grand Jury testimony of summary witness, Special Agent Susan Guernsey without specificity regarding the legal authority that supports these broad requests.  The government continues to object to these categories of requested discovery, as it had in the November 29, 2010 Joint Proposed Schedule for Discovery and Motions Practice. (DE 85 at 3-4, 6).

With respect to the audit files, on January 17, 2011, the government filed an ex parte application seeking an order that would permit (1) the IRS to disclose the tax examinations of LINDSEY MANUFACTURING COMPANY and Lindsey International, Inc. for tax years 2004, 2005, and 2006 and (2) the government attorneys on this case to retain the audit materials in their possession and share copies with defense counsel.  (DE 137).  The Court has yet to rule on the government's ex parte application.

B.   Applicable Law and Argument

The law applicable to the defense's discovery requests is summarized below.  It demonstrates that government has and will continue to abide by its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure.  Although the defendants' motion is premised on Brady alone, the government

-3-

will briefly discuss all three major sources of its discovery obligations.

//

### 1. Jencks Act

The Jencks Act, 18 U.S.C. § 3500, governs the disclosure of statements to the defense of testifying witnesses. As the government does not intend on calling Revenue Agent Hua or Special Agent Guernsey at trial, none of the defense's requests concerning them can be premised the Jencks Act.[1] Special Agent Farrell Binder's search warrant and complaint affidavits have been disclosed to the defense, as well as the interview reports she has authored. Additional seizure warrant affidavits will be disclosed if this Court grants the government's unsealing application, and additional interview reports will be produced pursuant to a protective order or if created in the future.

United States v. Harris, 543 F.2d 1247 (9th Cir. 1976) held that government agents must preserve their original interview notes made when a potential government witness or the accused is questioned. The government agents in this case have done so.[2] However, most notes that will be preserved under United States v. Harris are not statements as defined by the Jencks Act. See United States v. Spencer, 618 F.2d 605, 606 (9th Cir. 1980).

---

[1] Furthermore, the Jencks Act does not provide for production of witness statements until the witness has testified on direct examination in the trial of the case. 18 U.S.C. § 3500(a).

[2] The government has also requested that the agents preserve all drafts of interview reports and affidavits.

-4-

1  This is because most "notes are not complete, are truncated in
2  nature, or have become an unsiftable mix of witness testimony,
3  investigators' selections, interpretations, and interpolations."
4  Id.  The Congressional policy behind the Jencks Act was to
5  protect witnesses from being impeached with words that are not
6  their own or are an incomplete version of their testimony.  See
7  Palermo v. United States, 360 U.S. 343, 352 (1957).  "Therefore,
8  except in the unlikely event that the [agents] recorded their own
9  observations during the interviews in complete and full form in
10 their handwritten notes, the rough notes would not be Jencks Act
11 statements producible for the purpose of impeaching the testimony
12 of any one of the [agents] as a government witness at trial."
13 United States v. Griffin, 659 F.2d 932, 938 (9th Cir. 1981).[3]
14 Consequently, the Jencks Act provides no basis for the majority
15 of the requests in the defendants' motion.

    2.  Rule 16

In Harris, 543 F.2d at 1252-53, the Ninth Circuit held that
"[t]he preservation of [rough notes] is necessary in order to
permit courts to play their proper role in determining what
evidence must be produced pursuant to the Jencks Act or other
applicable law."  It further stated that rough notes taken by a
government agent in an interview with the defendant are
discoverable under Rule 16.  But see United States v. Griffin, 659
F.2d 932, 940 (9th Cir. 1981)(explaining that Harris' Rule 16

---

[3] Likewise, drafts of agents' affidavits and interview memoranda are, by definition, not complete.

-5-

ruling is dictum and no error or prejudice arises from failure to produce rough notes since defendant reviewed, corrected, adopted, and signed statement generated therefrom). In this case, the rough notes of interviews of the defendants have been previously disclosed.

In contrast, Federal Rule of Criminal Procedure 16(a)(1)(E) provides for production of material in the "government's possession, custody, or control" and "the item is material to preparing the defense;" however, Rule 16(a)(2) explicitly does not authorize "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500" or permit "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). The defense makes no argument in its motion why any of the material the government objects to producing to them is discoverable under this provision.

      c.    <u>Brady</u>

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court held that government suppression of evidence favorable to the defendant upon request is a due process violation where the evidence is "material" to guilt or innocence. <u>Id</u>. at 87; <u>see also</u> <u>United States v. Gordon</u>, 844 F.2d 1397, 1403 (9th Cir. 1988). Subsequently, the Supreme Court has made clear that favorable evidence includes impeachment evidence, <u>Giglio v.</u>

United States, 405 U.S. 150, 154 (1972), and that the prosecutor's obligations under Brady apply even in the absence of a specific request from the defendant. See United States v. Agurs, 427 U.S. 97, 112 (1976).

Evidence, whether exculpatory or impeachment evidence, is only "material," and hence within the scope of the constitutional discovery obligations imposed by Brady and its progeny if:

> there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

United States v. Bagley, 473 U.S. 667, 682 (1985).

A prosecutor's discovery obligations under Brady can extend to agents' rough interview notes if they contain favorable, material information. See United States v. Marashi, 913 F.2d 724, 732-34 (9th Cir. 1990); Griffin, 659 F.2d at 939. However, a prosecutor's obligation under Brady is to provide a defendant merely with the substance of all exculpatory information known to the prosecution, not that evidence in every form. See Hughes v. Hopper, 629 F.2d 1036, 1039 (5th Cir. 1980). Thus, where defense counsel already has the substance of the exculpatory information, the prosecution need not supply confirmation, additional reports, or testimony in which the information is reiterated. See Lugo v. Munoz, 682 F.2d 7, 9-10 (1st Cir. 1982), Hughes, 629 F.2d at 1039. "Brady is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." United States v. Beasley, 576 F.2d 626, 630 (5th Cir. 1978).

-7-

4. <u>Deliberative Process Privilege and Work Product Doctrine</u>

The Ninth Circuit has recognized that both the deliberative process privilege and the work product doctrine can apply to preclude discovery of specific documents prepared by prosecutors in connection with investigating or prosecuting a case. See <u>United States v. Fernandez</u>, 231 F.3d 1240, 1246-47 (9th Cir. 2000). "Although <u>Brady</u> entitles a defendant to production of exculpatory evidence, it does not reach the prosecution's analysis of such evidence." <u>United States v. Taylor</u>, 608 F.Supp.2d 1263, 1269 n.7 (D.N.M. 2009).

**Specific Defense Requests**

Based on the applicable law set forth above, the government believes all of the following requests should be denied.

<u>Request (1)</u>   As stated above, the government does not have any objection to disclosing the 2004, 2005, or 2006 audit files for the Lindsey corporate entities. This is the core of the defendants' motion, and, if the Court grants the government's <u>ex parte</u> application to disclose tax information, Request (1) will be largely moot. To the extent that this information is <u>Brady</u> at all, it is Revenue Agent Hua's <u>conclusion</u> (and not her file) that is at issue, and that information was disclosed in December. To the extent the defense claims that Revenue Agent Hua's context for her conclusion is also <u>Brady</u>, the government has no objection to allowing the defense to review the audit materials.

However, as drafted, Request (1) is overly broad in that it requests all correspondence and communications between FBI, IRS,

-8-

or other federal agents.  Revenue Agent Hua's communications with criminal investigators came years after the audits and are irrelevant to the defendants' proffered theory that "[t]he fact that another federal agency failed to find any illegal conduct . . . [after] reviewing many of the same files seized by the government during the execution of its search warrant . . . bears on the key elements of knowledge and intent."  Mot. at 6.  The failure occurred years before the LINDSEY MANUFACTURING COMPANY investigation even started.  The defense is not generally entitled to the communications of governments' agents during the course of its investigation.  The defendants' blanket request is not supported by any articulated materiality and should be denied.

   Request (2)   The government objects to Request (2) in the defendants' instant motion calling for all prosecutor communications discussing the audits.  Such communications are protected by the deliberative process privilege, the work product doctrine, and are not subject to disclosure pursuant to Rule 16(a)(2).

   Request (3)   The government objects to Request (3) in the defendants' motion for Revenue Agent Hua's resume/curriculum vitae.  The defense has not articulated how Revenue Agent's resume is Brady or is otherwise discoverable material.

   Request (4)   The government objects to Request (4) in the defendants' motion.  The government has already provided the defense with Revenue Agent Hua's statement in the form of a

Memorandum of Interview.  For the reasons stated above, the rough notes have been preserved but are not subject to discovery.

Request (5)   The government objects to Request (5) in part.  The government has already disclosed all the search warrant and complaint affidavits in this case and will disclose all finalized affidavits in connection with this investigation, assuming the Court grants the government's recent ex parte application to unseal several seizure warrant affidavits.  (DE 138).  However, the government has not disclosed Special Agent Guernsey's testimony as a summary witness in the Grand Jury and does not intend to do so.  The government represents that, at this time, it has no intention of calling Special Agent Guernsey as a witness at trial.  This material remains subject to Federal Rule of Criminal Procedure 6(e), and the defense has provided no basis for why it is discoverable.  The government further objects to the defendants' general request for all drafts of "the Binder 2010 search warrant affidavit."  The defense merely asserts its request without any specification as to why this material is subject to the government's criminal discovery obligations.

Request (6)   The government objects to Request (6).  Special Agent Binder and Special Agent Mendoza have not testified in this investigation.  As stated above, the government has not disclosed Special Agent Guernsey's Grand Jury testimony and does not intend to do so.  The defense fails to articulate grounds for the disclosure of this material.

Request (7)   Request (7) is moot as Revenue Agent Hua did

not testify before the Grand Jury.

    C.    <u>CONCLUSION</u>

As the items requested have been provided, will be provided, or are not discoverable, the defendants' Motion to Compel Discovery Pursuant to <u>Brady v. Maryland</u> should be denied.

DATED: January 18, 2011    Respectfully submitted,

    ANDRÉ BIROTTE JR.
    United States Attorney

    ROBERT E. DUGDALE
    Assistant United States Attorney
    Chief, Criminal Division

    /s/
    DOUGLAS M. MILLER
    Assistant United States Attorney

    NICOLA J. MRAZEK
    Senior Trial Attorney
    Criminal Division, Fraud Section

    Attorneys for Plaintiff
    UNITED STATES OF AMERICA